## TEXAS EMPLOYERS INS. ASS'N v. MONROE et al.

### No. 12033.

Court of Civil Appeals of Texas. Galveston.

Dec. 16, 1948.

Rehearing Denied Jan. 13, 1949.

Newton Gresham and Sam H. Hood, Jr., both of Houston (Fulbright, Crooker, Freeman & Bates, of Houston, of counsel), for appellant.

Emilie Heinatz and Combs & Dixie, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 11th District Court of Harris County, en-

tered in response to a jury's verdict on special issues, and—as expressly recited therein—"upon the undisputed evidence, stipulations of the parties, and the law applicable thereto," awarding the appellees benefits under the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St., art. 8306 et seq., for the death of Eugene D. Monroe, their husband and father, respectively, for 360 weeks, beginning March 28, 1946, at the rate of $20.00 per week, all reduced to a lump sum, amounting to $6645.00.

Through some 17 points of error, appellant inveighs here against the determination so adverse to it below, on grounds which may be shortened to this effect:

1. Because there was no evidence—or at least no sufficient evidence—to establish that the deceased was engaged in or about the furtherance of his employer's business or affairs at the time of the incident made the basis of this action; hence, appellant's respective motions below for a directed verdict and a judgment notwithstanding the verdict were improperly overruled.

2. The court reversibly erred in refusing appellant's motion for new trial, because the jury's answer to special issue #3, to the effect that the deceased was acting in the course of his employment for John W. Graham & Company at the time of the incident made the basis of this action, was without any evidence to support it, or at least was so against the overwhelming preponderance of the evidence as to be wrong.

3. The undisputed evidence showed that the deceased was in a state of intoxication immediately prior to and for several hours before his death, and there was no credible or admissible evidence to the contrary, wherefore the court erred in refusing to enter a requested judgment on that account independently, either by directed verdict, or by decree to that effect notwithstanding the verdict; or, if there was any credible or admissible evidence to the contrary, the jury's verdict finding decedent not to have so been in a state of intoxication was against the overwhelming preponderance of the evidence, hence was wrong.

4. The court erred in admitting testimony from appellees' witness Ernest Gayle Johnson, deceased's superintendent, to the effect that since the deceased was subject to 24 hour's call work per day, was working under him, and was following such witness' instructions in such work, "he would be acting in the line of his duty, if the purpose of the trip, upon which he met his death, had been to pick up a company-car, see his wife, spend the night at home, pick up supplies," etc., wherefore such testimony represented opinions and conclusions of the witness he was in no proper position to give, hence invaded the province of the jury.

A painstaking study of this greatly extended record convinces this Court that—in the state of it—none of appellant's presentments should be sustained.

No better way to determine just what the issues before the court and jury were may be found than to look first to the brief but accurate charge of the court to the jury, setting them forth, to-wit:

"No. 1. Do you find from a preponderance of the evidence that the deceased, Eugene D. Monroe, sustained fatal injuries on or about March 28, 1946, when the automobile in which he was riding plunged into the Houston Ship Channel?

"No. 2. Do you find from a preponderance of the evidence that the fatal injury sustained by the deceased, Eugene D. Monroe, on March 28, 1946, was an accidental injury, as that term is herein defined?

"No. 3. Do you find from a preponderance of the evidence that such fatal injury was sustained by the deceased while acting in the course of his employment for John W. Graham & Company?

"By the term 'injury sustained while acting in the course of employment', wherever used herein, is meant all injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises, or elsewhere. But if you find that the deceased's trip was being made for his own personal pleasure or business, then he would not be acting in the course and scope of his employment for John W. Graham &

Company at the time he met his death. You are further instructed by the court that an injury received by an employee while in a state of intoxication is not an injury received while in the course of his employment.

"No. 4. Do you find from a preponderance of the evidence that said deceased was not, at the time of his death, in a state of intoxication? * * *."

It will be noted that only the definitions applicable to the controversy upon this appeal, that is, those applying to the points of controversy here are quoted.

■ It will be further noted that neither the parties nor the court were under any illusion as to where the burden lay in proof of the facts so stated to be necessary for a recovery of the compensation benefits sought—that is, that the burden lay upon the appellees to prove that the deceased sustained a fatal accidental injury, while acting in the course of his employment for John W. Graham & Company, and that he was not at the time of his death "in a state of intoxication."

■ Indeed, appellant does not appear to have objected to such special issues, but to have not only acquiesced in their representing the material issues involved upon the appeal, but all of them, and that the trial court's definitions were correct. Whether appellant so conceded or not, this Court holds they were correct applications of the law to the developed facts in this case. The jury answered all of the five inquiries in the appellees' favor, or "yes", including the fourth, following the court's direction that an affirmative finding on the intoxication issue should be worded "he was not in a state of intoxication", which the jury did.

■ So that, appellant's assignments here may be discussed as referable to the verdict as thus rendered; when they are examined in the light of it and of the vast amount of testimony the appellees presented in support of their case, it becomes plain to this Court that such evidence was not only sufficient to support the whole verdict, but further, that there was no such preponderance, as claimed, against any feature of it as would justify its being

set aside as so against the overwhelming weight of the evidence as to be clearly wrong; that exclusive authority in this Court will therefore not be exercised.

The definitions the court's charge so gave, it is concluded, further rendered to no avail much of appellant's argument upon this appeal, to the effect, either that the deceased had not been at the time of the fatal injury acting in the course of his employment for Graham & Company at all, or that he had stepped aside on a mission of his own, which was a deviation from his employment, even by going over the ferry route by the Houston Ship Channel at all.

At great length, and with much earnestness, appellant urges that the trial court erroneously admitted the testimony showing such route to have been pursued by the deceased, whereas, by the geography of the country between the Saratoga Oil Field, where the oil well appellant served was located, and the City of Houston, the most direct and therefore the only permissible route for such an employee to traverse would have carried him over the regular Beaumont and Houston paved highway, which was far the shorter and more available route for such a journey from Saratoga to Houston.

As contra to that entire view, the appellees grounded their cause of action, and, as in consonance with it, upon their declaration that the employment contract between the deceased, E. D. Monroe, and Graham Drilling Company, had been a special one, of which the chief features were, in substance, these:

"Monroe was a tool-pusher, who was never released from the duty of supervising the well until they moved off from it. He was on continuous duty, 24 hours a day, subject to call at all times and was authorized to use his own judgment in his comings and goings around the well. His duties, which included keeping the well-operation in supplies, required him to make frequent trips to and from Houston and Saratoga. In view of this employment-relation, the fact that he was found dead in his car, which had plunged into the Houston Ship Channel between the well and

Houston and in the vicinity through which in the contemplation of his employment he was frequently required to travel, is sufficient basis to sustain a finding that he was in the course of his employment at the time of his fatal injury."

It thus appears that under this contract the movements the deceased made, and which resulted in his fatal accident, were customary, were known to his employer, and had its approval. In these circumstances, under our authorities, he was within the course of his employment at all times up to his fatal accident, hence he had not deviated therefrom. Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W. 2d 425, w/e ref.; United East & West Oil Co. v. Dyer, Tex.Civ.App. 162 S.W.2d 680; Traders & General Ins. v. Pool, Tex.Civ. App., 105 S.W.2d 492, w/e dism.; Texas Employers' Ins. Ass'n v. Lawrence, Tex. Civ.App., 14 S.W.2d 949; Security Union Ins. Co. v. McClurkin, Tex.Civ.App. 35 S. W.2d 240, w/e ref.; Liberty Mutual Ins. Co. v. Nelson, Tex.Civ.App., 174 S.W.2d 103, affirmed 1944, 142 Tex. 370, 178 S.W. 2d 514.

It is not held that the cited cases are all alike, or contain closely related states of fact, but rather, that the rationale of them is the same that controls the law of this case. That here under the contract of employment, both parties thereto contemplate situations where the employees' duties are continuous, cover a wide range of territory, and are to be performed at irregular hours and almost wholly at the employee's own choice as to routes, times, and methods of doing things; that, in such situations, it cannot be held as a matter of law that the employee had deviated from the course of his employment by failing to follow a beaten path.

The record discloses that during the trial appellant pressed his stated view upon the trial court, and objected to much of the testimony that so resulted in the jury's verdict, and that the trial court overruled such objections; likewise, through original and answering briefs, it has presented the same arguments here.

As affects the third assignment, challenging the jury's answer to Special Issue No. 4—that the deceased was not "in a state of intoxication"—as being against the undisputed evidence, a like holding must be made; in other words, it seems clear to this Court that there was sufficient testimony to support that finding, and certainly enough to prevent a reversal because there was such a preponderance against the finding as made it wrong.

It would be going beyond the requirements for this Court to undertake to cite, or even summarize, the evidence supporting its own conclusion; but there was direct testimony and that from the deceased's immediate superior, or boss, who had been with him that day up to about noon, that Monroe was not drinking on that date; another of his fellow employees testified to having offered Monroe a drink at 1:30 p. m. the day of his death, for a sore throat or bad cold Monroe then had, but that Monroe said he was taking sulfa medicine, and did not take it; likewise, the witness Lee Parker, whose house was near the well, and who was with him until at least mid-afternoon of the date of his death, testified that Monroe declined, and did not take a drink during the several hours he was at Parker's house that day. Further, the manager of the Funeral Home that buried Monroe, the first person on the scene of the accident, and who "personally" took every item from Monroe's car immediately after it was raised from the channel, was positive that there were no liquor bottles of any description in the car, or car trunk.

Appellee, as indicated supra, recognized it to be their burden, under the law, to show that the deceased "was not in a state of intoxication", just as the trial court charged, as above indicated, and as the courts have held in such cases as Texas Employers' Ins. Ass'n v. White, Tex.Civ. App. 68 S.W.2d 511.

█ They further insist that their testimony was sufficient to support the jury's finding that they had so met their burden, and this Court, as indicated, agrees that they did. Certainly the versions of those who so testified, they, being his fellow employees—one of them his immediate superior—and, some of them being with him as late as 5:00 p. m. on the day of his death,

to say nothing of the undertaker's failure to discover any relics of whiskey in his car, should be accepted as sufficient support for this jury's finding; in other words, the jury—having the most intimate, direct evidence before it, to which reference has been made, as well as that which was evidently more remote and circumstantial the other way, was entitled to conclude that the deceased was not intoxicated at the time of the fatal mishap.

■ Appellant's concluding criticism, in its fourth assignment, of the trial court's admission of testimony from Monroe's superintendent to the effect that the deceased would have been acting in the line of his duty, etc., if the purpose of his trip, in part, had been to pick up a company car, go by and spend the night with his wife at their home, etc., was reversible error, as constituting opinions and conclusions of the witness, is not thought to be sound.

All through appellant's brief and argument on this subject it is insisted that the witness was not describing what the nature and details of the employment were, but was merely speculating on his own, and opining that Monroe had been in the course of his employment, in his opinion, in making such excursions to his home, as indicated, etc.

But as already pointed out, the context shows that this witness primarily, and as a basis for the statements so attacked in this assignment of the appellant, was directly testifying to what the contract of the employment between Monroe and the drilling Company was; and that appellees' counsel, Mr. Combs, in the trial court, in opposing appellant's objection to the testimony, kept advising the court that what he was developing in that connection was the details of the employment. The record also shows that the trial court overruled such objections on that consideration, and this Court approves that ruling.

These objections are overruled because, as before held, the established facts of this case were sufficient to show, as well as to support a finding to the effect, that this deceased had an individualistic contract with his employer; that by arrangement with his immediate superior, under the em-

ployment he was, because of his position of a tool pusher, at the well then in its critical stage, shown to have been engaged in a specific mission, or special undertaking, for his employer on the day of his tragic death that night; that consonantly, there was no evidence of sufficient probative value to show that he ever did step aside from, or get out of the employment he was so engaged in, prior to his death.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.