In view of our holding in Cause 12009, the appeal in Cause No. 12022 becomes moot. In Cause No. 12022, Rutledge is appealing from a second denial of a Non-resident Seller's Permit by the Commission based on the finding of a prohibited "tied house" relationship between applicant and Major Brands of Texas, Inc., the holder of a Texas Wholesaler's Permit. Article 666–17b(2)(e), Vernon's Texas Penal Code (Article 1, Section 17b(2)(e) of the Texas Liquor Control Act).

We reverse and render Cause No. 12009. We dismiss Cause No. 12022.

Cause No. 12009 reversed and rendered. Cause No. 12022 dismissed.

SHANNON, J., dissents.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Richard Owen UPTON, guardian of Rebecca Ann Upton and David Upton, minors, Appellees.**

**No. 17391.**

Court of Civil Appeals of Texas, Fort Worth.

March 16, 1973.

Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellant.

Craig & Godbey, and Wallace Craig, Hurst, for appellees.

## OPINION

BREWSTER, Justice.

This appeal is by the insurance carrier, Liberty Mutual Insurance Company, from a judgment awarding the children of Mrs. Ruth Upton, deceased, death benefits under the Texas Workmen's Compensation Law by reason of Mrs. Upton's death while employed by Monnig's Dry Goods Store in Fort Worth, Texas. The trial below was non-jury.

Mrs. Upton was employed as a saleslady in the infant's department of the dry goods store. On January 8, 1971, while she was on the job on the store premises in the department where she worked and while she was talking over the telephone on company business, Mrs. Upton's ex-husband walked up and shot her four times and stomped her and she died from the injuries.

Appellant has four points of error which can be broken down into two basic contentions, namely: (1) Mrs. Upton was not, within the meaning of the Workmen's Compensation Law, Art. 8309, Sec. 1, Subsection 2, Vernon's Ann.Civ.St., acting within the course of her employment at the time she was killed because the undisputed evidence showed that her death was caused by the act of a third party who intended to injure her because of reasons personal to him and which were not directed against her as an employee or by reason of her employment; and (2) appellees did not meet their burden of showing at the trial that Mrs. Upton's injuries that caused her death were sustained in the course of her employment because there was no evidence tending to show that such injuries had to do with and originated in the work or business of the employer as is required by Subsection 4 of Sec. 1 of Art. 8309, V.A.C.S.

The undisputed evidence showed that Mr. and Mrs. Upton had been divorced twice, the last time being in 1968. They had argued a lot over child support, visitations, and petty things. They were mad at each other a lot. On the morning of the killing Mrs. Upton told a fellow employee that Upton had threatened to kill her. Later in the day Upton walked up, pulled his gun, and shot her. Two or three days before the killing the Uptons were heard arguing about child support and other matters and she was trying to get him to leave her home.

There was evidence that Upton had a history of emotional disorders dating back to his childhood. A psychiatrist testified that Upton had a very definite paranoid type of illness and that even as a child he had thought the teacher and other students plotted against him. He was obsessed with the fact that everyone was out to harm him and that they were talking about him. This doctor's opinion was that at the time of the killing Upton was not capable of entertaining a rational intention; that he was mentally ill; that he was a schizophrenic and had a schizophrenic thought disorder and illness. In the doctor's opinion even though Upton's reasons for shooting his wife were schizophrenic and psychotic, they were nevertheless reasons personal to him.

The trial court found that Mrs. Upton was acting in the course of her employment for Monnig's at the time she received the injuries that caused her death; that Mr. Upton at the time he shot and killed Mrs. Upton was not mentally capable of forming a rational intention to injure her; that Upton was at the time of doing the act incapable of rational reasoning and was of unsound mind.

■ The trial court concluded that Subsection 2 of Section 1 of Art. 8309, V. A.C.S., did not apply in this case. We agree with that conclusion.

The evidence here was sufficient to support the trial court's finding that Mr. Up-

ton was not mentally capable of forming a rational intention to injure Mrs. Upton. This finding is the key to deciding the question being discussed.

Texas courts hold that where the mind of the third person that inflicts the injury to the employee is incapable of entertaining a rational intention or is incapable of reasoning that the statutory exception provided for in Subsection 2 of Section 1 of Art. 8309 does not apply. Travelers Insurance Company v. Hampton, 414 S.W.2d 712 (Eastland, Tex.Civ.App., 1967, ref., n. r. e.) and Petroleum Casualty Co. v. Kincaid, 93 S.W.2d 499 (Eastland, Tex.Civ. App., 1936, app. for writ of err. dism. in 132 Tex. 325, 122 S.W.2d 1048). The basis of the holdings in those cases is that the intent to injure spoken of in the statute means a rational intent. If the mind of the third person who inflicted the injury on the employee was incapable of entertaining a rational intent then such third person, within the meaning of the statute, had no intention to injure the employee at the time in question.

We overrule appellant's contentions to the effect that it is not liable because of the provisions of Subsection 2, Section 1, Art. 8309, V.A.C.S.

"The controlling issue in all compensation cases is whether claimant received an accidental injury *in the course of his employment* . . . . " Potomac Insurance Company v. Milligan, 335 S.W.2d 648 (Fort Worth Civ.App., 1960, ref., n. r. e.). (Emphasis ours.)

Appellant also contends on this appeal that the injuries that caused Mrs. Upton's death were not shown to have been sustained within the course of her employment within the meaning of the Texas Workmen's Compensation Law because no evidence was offered during the trial of the case to show that Mrs. Upton's injuries that caused her death "had to do with" and "originated in the work or business of the employer" as is required by Subsection 4, Section 1, of Art. 8309, V.A.C.S.

The burden of proof was on the appellees here to show that the injuries that resulted in Mrs. Upton's death were sustained by her while she was acting in the course of her employment within the meaning of the Texas Workmen's Compensation Law as is set out in the various subsections of Section 1, Art. 8309, V.A.C. S. Texas Employers Ins. Ass'n v. Monroe, 216 S.W.2d 659 (Galveston, Tex.Civ.App., 1948 ref., n. r. e.). For other cases see 63 Tex.Jur.2d 423, Workmen's Compensation, Sec. 405.

The trial court's finding on course of employment was: "Ruth Upton was engaged in or about the furtherance of the affairs or business of Monnig Dry Goods Company when she received an injury which was the producing cause of her death, and was, therefore, in the course of her employment for Monnig Dry Goods Company at such time."

As to such a finding the courts say: " 'In order that an employee may recover under the provisions of this law, proof that his injury occurred, while he was engaged in or about the furtherance of the employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business, or profession.' " See Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67 (Tex.Com.App., 1935); Aetna Life Ins. Co. v. Burnett, 283 S.W. 783 (Tex.Com.App., 1926); and Texas General Indemnity Company v. Bottom, 365 S.W.2d 350 (Tex.Sup., 1963). See also Vaughn v. Highlands Underwriters Insurance Co., 445 S.W.2d 234 (Houston, Tex.Civ.App., 1st Dist., 1969, ref., n. r. e.) and Phoenix Insurance Company v. Bradley, 415 S.W.2d 928 (Texarkana, Tex.Civ. App., 1967, no writ hist.).

Subsection 4, Section 1, Art. 8309, V.A. C.S., expressly provides in substance that an injury sustained in the course of employment, within the meaning of that law, means an injury (1) that had to do with

and originated in the work or business of the employer; (2) that was sustained by the employee while engaged in or about the furtherance of the business of his employer.

■ In the case before us we are convinced that the evidence was undisputed that Mrs. Upton, when shot, was engaged in or about the furtherance of the business of her employer, but this showing alone was not enough to show an injury sustained "in the course of her employment." The claimants offered no evidence whatever that tends to show that Mrs. Upton was shot because of her employment or that the injury causing her death was of a kind and character having to do with and originating in the work or business of Mrs. Upton's employer. The undisputed evidence showed that the shooting was directed against her because of reasons that were personal to her and to Mr. Upton.

The fact that Mr. Upton's mind was incapable of forming a rational intent to injure Mrs. Upton is not the key factor in deciding the question of whether the injury involved "had to do with" and "originated in the work or business of the employer."

In the case of Service Mut. Ins. Co. of Texas v. Vaughn, 130 S.W.2d 392 (Beaumont, Tex.Civ.App., 1939, dism. judgm. correct) Vaughn was employed as a night watchman to guard some machinery. His daughter had married one Hopkins and they were separated. Hopkins had threatened to kill Vaughn and several other members of his wife's family. One dark night while Vaughn was leaning against a tree guarding machinery for his employer Hopkins slipped up behind him and killed him with a hammer. The court held that Vaughn was not killed in the course of his employment because the killing came under the exclusion provided for in Subsection 2, Section 1, Art. 8309, and also because there was no causal connection between the death and the employment. The attack was personal and unrelated to the employment.

In the case of Fidelity & Casualty Co. of New York v. Cogdill, 164 S.W.2d 217 (San Antonio, Tex.Civ.App., 1942, ref. want merit) a motion picture projectionist, while working at his job, was assaulted by a third party with a blackjack. There was no evidence offered to show the motive of the attacker. The court held that in order for claimant to recover he had to show a causal connection between the work the employee was hired to do and his injury.

The following is from 58 Am.Jur. 766, Workmen's Compensation, Sec. 265: ". . . when the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment."

The Texas case of Highlands Underwriters Insurance Co. v. McGrath, 485 S. W.2d 593 (El Paso, Tex.Civ.App., 1972, no writ hist.) cites this text with approval. That court also held that compensation was not recoverable where an employee was attacked by third persons for reasons unconnected with the employee's employment and where the employment or the conditions under which the work was being necessarily performed by the employee did not cause the employee to be exposed to the injury that caused his death.

We have not been able to find a Texas case exactly like this one. The cases relied upon by appellees as supporting their contention that the injuries causing Mrs. Upton's death were sustained in the course of her employment are Petroleum Casualty Co. v. Kincaid, supra; Southern Surety Co. v. Shook, 44 S.W.2d 425 (Eastland, Tex.Civ.App., 1931, ref.); Travelers Insurance Company v. Hampton, 414 S.W.2d 712 (Eastland, Tex.Civ.App., 1967, ref., n. r. e.); and Hartford Accident & Indemni-

ty Co. v. Hoage, 66 App.D.C. 163, 85 F.2d 417 (1936).

In the Kincaid case the court expressly stated: "The usually troublesome question of whether the injury was one 'having to do with' and 'originating in' the work or business of the employer is not involved." This Kincaid case was decided on the theory that there was a direct causal connection between the employment and the injury. See on this Service Mut. Ins. Co. of Texas v. Vaughn, 130 S.W.2d 392, supra, at page 396. See same case to effect that robbery was the causal connection in the Shook case. And the difference in the Hampton case and this one is that there the employment or conditions under which the work was necessarily performed caused exposure to the very risk resulting in the injury. See on this Highlands Underwriters Insurance Co. v. McGrath, 485 S.W.2d 593, supra, at page 596.

The Hoage case relied on by appellees arose under the Workmen's Compensation Laws of the District of Columbia. The chef working at his duties in a kitchen was stabbed by a crazed stranger. The kitchen was located between the employer's lunchroom and a back dining room and was also a passageway for customers desiring to go to two bathrooms upstairs. The court held that this injury arose out of and in the course of his employment on the theory that the same rule should apply as is applied to employees injured upon public streets by hazards incident thereto while acting on his employer's business.

We consider none of the cases relied upon by appellees to control a decision of the question of whether Mrs. Upton's injuries had to do with and originated in her employer's business.

There are cases from other states that are almost identical with this one.

In Belden Hotel Company v. Industrial Commission, 44 Ill.2d 253, 255 N.E.2d 439 (1970) a hotel employee was shot to death in the basement of the hotel where he worked by the husband of a hotel maid during a fit of jealousy. Under the Illinois statute in order to recover compensation the death must have arisen out of the employment. The court held that the injury in question did not arise out of the employment.

In State House Inn v. Industrial Commission, 32 Ill.2d 160, 204 N.E.2d 17 (1965) a lady switchboard operator was injured while on duty when she sat at a table with another employee and was there attacked and kicked and beaten by her husband. The question was whether the injuries arose out of the employment. The court held: the mere fact that the employee is present at the place of his injury because of his employment is not enough. "Only if the injury is a result of some risk in the employment itself can an award be justified. . . . An injury arises out of the employment when a causal connection exists between the conditions under which the work is required to be performed and the resultant injury. Conversely, an injury does not arise out of the employment if it is caused by reason of something unrelated to the nature of the employment." The court held that compensation was not there recoverable.

In Wood v. Aetna Casualty & Surety Company, 116 Ga.App. 284, 157 S.E.2d 60 (Ct. of App., Georgia, 1967) a supermarket employee was killed while on his job by the husband of a fellow employee with whom he ate lunch. The assailant was jealous and intent on revenge. The law provided that compensable injuries were those that arose out of and in the course of employment. The court said: ". . . 'in the course of' have relation to the time, place and circumstances under which the accident occurs, while the words 'arising out of' have relation to a causal connection between the employment and the injury." That court laid down the test for determining if the injury "arose out of the employment" as follows: " '(An accident) * * * "arises out of" the employment, when there is apparent to the rational

mind, upon consideration of all the circumstances (after the event), a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . .'" The court also held that the injury is non-compensable if it cannot be fairly traced to the employment as a contributing proximate cause, and if the injury comes from a hazard to which the workman would have been equally exposed apart from the employment. Compensation was denied in this case.

In Graham v. Graham, 390 P.2d 892 (Sup.Ct. of Okl., 1964) claimant's husband was shot and killed by a jealous husband of a fellow worker in a cafe while they were both on duty on their jobs. The court denied compensation on the ground that the injury and death did not arise out of the employment.

The following is from 99 C.J.S. Workmen's Compensation § 227, p. 765: "An injury to an employee assaulted by one not associated with him in the employment is not compensable as not arising out of the employment where there was no causal connection between his employment and the assault, even though the employee was engaged in performing the duties of his employment at the time of the assault. Accordingly, injury from an assault by a third person is not compensable where the assault arose out of a matter not connected with his master's business, . . . ."

The following is from Larson on Workmen's Compensation, Sec. 7.20 at 3–10 (1972): ". . . if the employee has a mortal personal enemy who has sworn to seek him out wherever he may be, and if this enemy happens to find and murder the employee while the latter is at work, the employment cannot be said to have had any causal relation to the death."

In Sec. 11.21 at 3–172 of the same work is the following: "When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test."

Section 11.21 at 3–176 of Larson's work is the following: "When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable even in states fully accepting the positional-risk test, since that test applies only when the risk is 'neutral.'"

The Texas Supreme Court held in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72 (1922) that: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."

We hold on the basis of the above cited authorities that the wounds that caused Mrs. Upton's death were not sustained by her in the course of her employment for Monnig's for the reason that they did not "have to do with" and "originate in the work or business" of Monnig's as is required by Subsection 4, Section 1, Art. 8309, V.A.C.S. Compensation is therefore not recoverable by reason of Mrs. Upton's death.

For the reasons stated we sustain appellant's points of error Nos. 1, 3 and 4 and overrule its point of error No. 2 which advances his contentions relative to Subsection 2, Section 1, of Art. 8309.

The case was obviously fully developed on the trial.

Judgment of the trial court is reversed and judgment is here rendered that the appellees take nothing by their suit.