**MID–CONTINENT CASUALTY
COMPANY, Appellant,**

v.

**Don B. WHATLEY, Appellee.**

No. 05–86–00814–CV.

Court of Appeals of Texas,
Dallas.

Nov. 19, 1987.

Donald D. Wren, Dallas, for appellant.

Michael Thompson, Denison, for appellee.

Before WHITHAM, ROWE and
HECHT, JJ.

ROWE, Justice.

In this workers' compensation case, Mid–Continent Casualty Company (Mid–Continent), insurance carrier for Garrett Builders, the building firm that employed Don B. Whatley (Whatley), the employee who was injured, seeks to set aside a jury finding that Whatley was injured in the course of his employment. Citing TEX.REV.CIV. STAT.ANN. art. 8309, § 1 (Vernon 1967), which provides that injuries caused by an act of God totally unrelated to employment are not compensable, Mid–Continent contends that the evidence is legally and factually insufficient to support the jury's affirmative finding on course of employment. Whatley was injured when a rotten limb, blown off a tree by a 30–35 mile-per-hour wind, crashed onto a traveltrailer in which he was working. For reasons stated below, we overrule the points of error of Mid–Continent and affirm the trial court's judgment in favor of Whatley. Further, we deny Whatley's motion for damages for delay.

■ At trial, only two witnesses testified: (1) Whatley, in person; and (2) the doctor who treated his injuries, by deposition. According to Whatley, he was injured at McKinney, Texas, while working inside a 22–24 foot metal traveltrailer used by his employer as a construction-site office. According to the doctor who took a medical history, Whatley reported that he was injured when "a tree had been blown onto the trailer as a result of a *cyclone*" (emphasis added). The parties stipulated that, at the time of injury, the winds in the vicinity of the trailer were blowing at 30–35 miles per hour and were blowing at other locations within the city at even higher velocities. Also, according to stipulation, nine specified locations in or near the city suffered property damage due to the winds. While Whatley acknowledged that the winds were blowing about 30–35 miles an hour, he testified that they did not

"whip the trailer around" and that the trailer was not shaking, trembling, or leaning. In fact, from inside the trailer, which was still on wheels and not on blocks, Whatley felt no movement whatsoever, even the trash cans on the outside of the trailer were not blown over. The trailer was parked near a 36–foot tall pecan tree, under a large overhanging limb. The limb was described by Whatley as being 50–60 feet long, 30–36 inches in diameter, and between 75 and 80 percent hollow, with no more than four-to-six inch rim of live tissue around the outside. In his expert opinion, "a normal wind would have blowed it off, if it would have hung it in the right direction."[1] A series of photographs depicted the extent to which the roof of the lightly-constructed vehicular trailer was buckled downward by the weight of the tree limb when it fell.

■ Whatley pleaded that he sustained totally and permanently incapacitating injuries while engaged in the course of his employment. Mid–Continent responded with a general denial and a single affirmative defense which questioned the extent of Whatley's injuries.[2] We note that nowhere in its pleadings does Mid–Continent refer to Whatley's injuries as having been caused by an act of God, to wit, by a windstorm, within the following exclusion appearing in article 8309, § 1:

The term "injury sustained in the course of employment," as used in this Act, *shall not include:* (1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public.

(emphasis added).

The charge submitted by the court contained the following broad special issue

1. Fortuitously, Whatley was qualified to testify as an expert concerning the tree limb because he was college-trained in tree surgery, was currently licensed to practice as a tree surgeon in California, and had spent much of his adult working career in the tree business.

2. We acknowledge that "act of God" is not an affirmative defense which Mid–Continent was obliged to plead. *Walters v. American States Insurance Co.,* 654 S.W.2d 423, 429 (Tex.1983) (McGee, J. concurring).

designed to establish compensability: "Was plaintiff (Whatley) injured in the course of his employment?" Only two pertinent instructions accompanied this issue:

"INJURY IN THE COURSE OF EMPLOYMENT" means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs of business of his employer, whether upon the employer's premises or elsewhere.

An injury caused by windstorm is not in the course of employment, unless the employee is engaged at the time in the performance of duty subjecting him to a greater hazard from windstorm than ordinarily applies to the general public.

Notably missing from the charge is an instruction defining either "windstorm" or "act of God." Mid–Continent requested no additional issues or instructions and filed no objections to the charge. On the other hand, Whatley requested a definition of "act of God" and objected on several grounds to the instruction about injuries caused by windstorm, among which grounds are the following:

[Windstorm] is not defined to be an act of God, and a definition as requested by the plaintiff has not been given concerning an act of God, and, rather, the windstorm is assumed to be an act of God. Plaintiff would show that, by definition, all windstorms are not of sufficient violence and force to constitute an act of God.

The jury is permitted to speculate that any wind, at the time of a storm, regardless of how mild, if it contributes to an injury, causes the injury so sustained to be outside the course and scope of employment.

As Whatley cautioned the trial court prior to submission of the charge, in the absence of a definition as to what constitutes a "windstorm" or an "act of God," the jury had no proper guidance for assessing the lawful effect which the blowing winds had on Whatley's employment under section 1 of article 8309. If winds blowing at that particular time and place were not a windstorm, the jury could properly return an affirmative finding on scope of employment without having to deal with the section 1 proviso. If those winds *were* a windstorm, however, an affirmative finding on course of employment which took fully into account the section 1 proviso could properly be returned *only if* such a windstorm, as a matter of law, was itself also an act of God. If such a windstorm *was not* in itself an act of God, the jury had within its province the latitude to return a factually sufficient *negative* answer on scope of employment which would *not* be in full compliance with section 1 requirements. Admittedly, this is the prospect which Whatley sought to cover in order to protect himself in the event the jury returned a negative finding on course of employment.

■ Regardless of the motive behind Whatley's objections, the objections were sufficient to call attention to the possibility that the charge failed to fully address the inferential rebuttal aspect of evidence in the record raising the statutory exclusion pertinent to acts of God. *Cf. Transport Insurance Company v. Liggins*, 625 S.W. 2d 780 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). At this juncture, in order to obtain advantage from inferential rebuttal evidence favorable to it, Mid–Continent should have assumed the burden of curing the defect since the cure could inure only to its benefit. Having failed to do so, in the face of Whatley's objection, unless the windstorm instruction as then submitted is the legal equivalent of an act of God instruction, Mid–Continent cannot thereafter complain that the jury finding is at odds with the evidence connecting Whatley's injuries to an act of God. Stated otherwise, depending upon the fact circumstances to which it is applicable, the charge may or may not be determinative of the issue upon which Mid–Continent bases this appeal. Thus, the question to be resolved on appeal is whether the court's charge, as framed, necessarily engages the jury to resolve an evidentiary dispute that some act of God was the cause of Whatley's injuries.

In deciding the dispositive question, we apply to the record the definitions of "windstorm" and "act of God" previously sanctioned by Texas courts. For "windstorm" we rely upon *Firemen's Insurance Company of Newark, New Jersey v. Weatherman*, 193 S.W.2d 247, 248 (Tex. Civ.App.—Eastland 1946, writ ref'd n.r.e.). For "act of God" we rely upon *Transport Insurance Company v. Liggins*, 625 S.W. 2d 780, 782 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.).

## WINDSTORM

In *Weatherman*, a policyholder sued his property insurer to recover on a windstorm loss. Undoubtedly, in such an instance, the term "windstorm" will be given a broad and liberal interpretation. Thus, by utilizing the discussion of the term from that case, we give Mid–Continent the benefit of the doubt. The Eastland Court in *Weatherman* commented on the matter as follows:

> there is substantial agreement that a "windstorm" is a wind of "unusual violence" and that it must assume "the aspects of a storm" ... it is more than an ordinary gust of wind, however prolonged ... it may or may not have the whirling features of a cyclone or tornado. Some of the definitions state that it is usually accompanied by little or no rain. Webster defines a windstorm as "a storm characterized by high wind with little or no rain." But he defines a "storm" as "a violent disturbance of the atmosphere, attended by wind, rain, snow, hail, or thunder and lightning." 69 Corpus Juris, page 1306, defines "windstorm" as "a storm characterized by high wind with little or no precipitation," thus following Webster's definition.

*Weatherman*, 193 S.W.2d at 248.

After noting the above, the appellate court in *Weatherman* sanctioned this definition given by the trial court in its charge:

> The term windstorm as used herein means something more than an ordinary gust of wind, no matter how prolonged, and though the whirling features that usually accompany tornados and cy-

clones need not be present, it must assume the aspects of a storm.

*Weatherman*, 193 S.W.2d at 248.

## ACT OF GOD

In *Liggins*, an employee injured by a tornado while operating a truck tractor sought recovery of workers' compensation benefits from his employer's insurance carrier. The trial court's charge in *Liggins* included a course of employment issue almost identical to that in the case before us, but the term "injuries sustained in the course of employment" tracked the act of God language of the statutory exclusion and was accompanied by the following definition of act of God:

> By the term "act of God" as used herein is meant any accident that is due directly or exclusively to natural causes without human intervention and which no amount of foresight, pain, or care reasonably exercised could have prevented. The act must be one occasioned by the violence of nature, and all human agency is to be excluded from creating or entering into the cause of the resulting mischief. The term implies the intervention of some cause not of human origin and not controlled by human power.

*Liggins*, 625 S.W.2d at 782-83.

## WINDSTORM AS ACT OF GOD

When the above definitions of windstorm and act of God are applied to the facts in this record, uncertainty exists as to whether these type events, either singularly or conjunctively, caused injury to Whatley. There may have been no windstorm and no act of God, or there may have been both a windstorm and an act of God. Significantly, however, there may also have been a windstorm but not an act of God. By preferring certain disputed testimony pertinent to the above definition of "windstorm" and favorable to Mid–Continent, the jury could conclude that the atmospheric disturbance *was* characterizable as a windstorm and that Whatley's injury was caused by that means. On the other hand, when the above definition of "act of God" is applied to the disputed facts in this

record, by preferring different testimony pertinent to that term and favorable to Whatley, the jury could conclude that Whatley's injuries *were not* attributable to an accident due to violent natural causes so beyond human power as to be unpreventable. The winds did not act either upon Whatley or upon the traveltrailer workplace directly but acted instead through intervention of a large overhanging limb, incidentally so rotten that it could be dislodged by a normal wind. This limb, because of its condition, constituted a hazard which Whatley's employer, in the exercise of reasonable care, should have earlier discovered and removed to "exclude" the mischief which it created for employees working below in a make-shift office. Thus, under the peculiar fact circumstances which the jurors had to consider in this case, the terms "windstorm" and "act of God" were not equivalents capable of being freely interchanged in connection with an article 8309, § 1, special issue submission. A finding that the injury to Whatley was caused by windstorm does not also pass muster as a finding that his injury was caused by an act of God.

Having resolved the dispositive question, we can now properly overrule all of Mid–Continent's points of error. Points of error one and two attack the legal sufficiency of the evidence to support the jury's affirmative answer to the course of employment issue. Points of error three and four attack factual insufficiency respecting that issue. All points of error assume that because the jury's affirmative answer to the course of employment issue lacks evidentiary support, Mid–Continent is entitled to either a reversal and rendition or a reversal and remand. This assumption is ill-placed; the charge is incapable of obliging such a result. Because the jury's determination of the issue was measurable only in terms of a windstorm instruction, and because windstorm in the context of the record is not the legal equivalent of an act of God, even an opposite finding (*i.e.*, a negative answer to that course of employment issue which was submitted) would not justify, over Whatley's carefully formulated objection, the relief which Mid–Continent seeks

on appeal. The evidence is at least sufficient, both legally and factually, to support the answer the jury gave to the question it was asked. *Walters v. American States Insurance Co.*, 654 S.W.2d 423, 427 (Tex. 1983). On the other hand, the evidence does not conclusively establish that Whatley's injury was caused by an act of God totally unrelated to his employment. Thus, none of Mid–Continent's points present reversible error, and all are overruled.

## APPELLEE'S MOTION FOR DAMAGES UNDER RULE 84

Next, we consider Whatley's request that, as provided by TEX.R.APP.P. 84, we award damages against Mid–Continent for delay. An appellate court may award damages only upon affirmance or modification of the judgment. *Bainbridge v. Bainbridge*, 662 S.W.2d 655, 657 (Tex. App.—Dallas 1983, no writ). In the present case, we affirm the judgment. Nevertheless, before an appellate court may assess damages under rule 84, it must make two findings: that the appeal was taken for delay and that there was no sufficient cause. Generally, in making these findings, the court must review the statement of facts from the point of view of the advocate and determine whether he had reasonable grounds to believe that the case would be reversed. *Bainbridge*, 662 S.W.2d at 657. Only after a detailed study of the record were we able to pinpoint precisely why a reversal for Mid–Continent depends solely upon a holding that this particular windstorm, as a matter of law, was an act of God. The briefing by the parties left open the possibility that factual insufficiency subsisted, and under this record such was susceptible to an affirmative judgment call. We cannot say, therefore, that the likelihood of a favorable result for Mid–Continent was so improbable as to make this an appeal taken without cause. Accordingly, we deny appellee's motion for damages for delay.

The judgment of the trial court is affirmed.

HECHT, Justice, concurring.

This case presents a simple question: whether the evidence is factually and legally sufficient to support the verdict. The simple answer is yes. With this much of the majority opinion, and the denial of delay damages, I agree.

The majority, however, have made a very simple case very complicated by attempting to show that even if the evidence in support of the verdict were lacking, Mid–Continent would not be entitled to relief on appeal. So extended is this digression that it crowds out the real issue in the case. What should be at most a fallback position is the bulk of the majority's opinion, which neither party has briefed, and which is wholly unnecessary to a full resolution of the case.

The majority base their conclusion that Mid–Continent is not entitled to reversal, irrespective of any insufficiency of evidence, upon their determination that the jury was given an incorrect instruction. The deficiency the majority find in the jury charge is that it uses the word "windstorm" in place of the phrase "act of God" in instructing the jury that certain injuries are not in the course of employment. Under the Worker's Compensation Act, an employee injured by act of God is not injured in the course of employment unless his duties subjected him to greater hazard from the occurrence than the general public. Art. 8309, § 1, Tex.Rev.Civ.Stat.Ann. (Vernon 1967). Substituting "windstorm" for "act of God" in instructing the jury as to this statutory provision assumes that a windstorm is an act of God. In this case, however, say the majority, "there may ... have been a windstorm but not an act of God." Thus, they reason, even if the evidence compels the finding that the cause of Whatley's injury was a windstorm, the same evidence nevertheless permits a finding that the cause was not an act of God. Inasmuch as Whatley can be denied recovery only if his injury was caused by an act of God and he does not fall within the statutory proviso, a finding favorable to

Mid–Continent on the issue submitted does not bar Whatley from recovery.

The proposition that a windstorm is not an act of God is surely exceptional.[1] Nevertheless, the majority say they are compelled to this view by the legal definitions of the two expressions applied to the facts of this case. I am not at all convinced as a legal matter that "windstorm" means the same in property insurance cases as in compensation cases, but to avoid further complicating the matter, I assume the definitions the majority use are correct. Applying those definitions to this case, I cannot see how the jury could have found that Whatley's injury was caused by a windstorm but not by an act of God.

Assuming the wind blew the limb off the tree onto the trailer, injuring Whatley, the majority contend that the wind might not be found to be an act of God for two reasons. The first is that there is evidence that the limb was rotten and might have fallen of its own weight without any wind. If the limb was not blown off but fell off, Whatley's injury was not caused by the wind. However, the majority's analysis assumes the limb did not fall off but was blown off. One cannot both assume the limb was blown off and wonder if it fell off. The second reason the majority give to explain how a windstorm is not an act of God is that Whatley's employer should have known the limb was rotten and should not have parked the trailer beneath it. In other words, the majority say that if the wind blew the limb down but the employer was negligent, Whatley's accident was caused by the wind but not by an act of God. Why the employer's negligence affects an act of God but not a windstorm the majority do not explain.

The wind either blew the limb off the tree or it did not. If it did, Whatley's injury was caused by windstorm even if Whatley's employer should have known to move the trailer, the windstorm was an act of God, and Whatley cannot recover unless his work subjected him to greater hazard. If the wind did not blow the limb off the

1. "The wind blows wherever it pleases. You hear its sound, but you cannot tell where it comes from or where it is going." *John* 3:8 (New International Version).

tree, Whatley's injury was not caused by windstorm and Whatley is entitled to recover.[2] If the evidence required the jury to find that Whatley was not injured in the course of employment under the instruction in the charge, Whatley is not entitled to recover under the statute and Mid–Continent is entitled to reversal.

Noting that Whatley both objected to the charge and requested additional instruction, and that Mid–Continent did neither, the majority then observe:

> At this juncture, in order to obtain advantage from inferential rebuttal evidence favorable to it, Mid–Continent should have assumed the burden of curing the defect since the cure could inure only to its benefit.[3] Having failed to do so, in the face of Whatley's objection, unless the windstorm instruction as then submitted is the legal equivalent of an act of God instruction, Mid–Continent cannot thereafter complain that the jury finding is at odds with the evidence connecting Whatley's injuries to an act of God.

The majority reject an argument Mid–Continent does not make. Mid–Continent's point is not that the evidence compels a finding that Whatley's injury was caused by an act of God; rather, Mid–Continent's point is that the evidence compels a finding that Whatley's injury was caused by windstorm. Even assuming that a windstorm is not an act of God under the circumstances of this case, the issue is still whether the evidence supports the verdict.

In *Walters v. American States Insurance Co.*, 654 S.W.2d 423 (Tex.1983), a jury found that plaintiff was injured in the course of employment. On appeal, defendant argued that the evidence did not support the jury finding because the plaintiff's injury fell within a statutory exclusion similar to the one involved in the present case. The jury had not been instructed as to the statutory exclusion. Although the defendant could not complain of the absence of a proper instruction in the charge because it had failed to object at trial, the defendant could nevertheless complain of the insufficiency of the evidence. The issue was not whether the evidence would have supported a finding favorable to the plaintiff had the jury been properly instructed, but rather, whether the evidence supported the jury's answer to the issue put to them.

*Walters'* application to the present case is that even if the jury were improperly instructed as to "windstorm" instead of "act of God", Mid–Continent is entitled to complain on appeal that the evidence does not support their finding as instructed. Mid–Continent does not and, because it did not object at trial, cannot object of error in the instruction. It may nevertheless urge reversal on insufficiency of the evidence. If the evidence were insufficient to support the verdict, the judgment would have to be reversed. Thus, the majority are incorrect in their discursive analysis.

---

**2.** If Whatley's injury was not caused by windstorm, it might have been caused by some other act of God, as a matter of logic. However, Mid–Continent does not make this argument, and there does not appear to be evidence to support it.

**3.** I assume, although it is not entirely clear, that the majority do not intend, by this assignment of responsibility to Mid–Continent for curing the perceived defect in the charge, to suggest that Mid–Continent had the burden of proof as to the statutory exclusion. The burden of proving injury in the course of employment is upon the claimant. "Whenever an exclusion is raised by the evidence, the burden is on the claimant to negate the exclusion as part of his case." *Walters*, 654 S.W.2d at 429 (McGee, J., concurring); *accord Traders & General Ins. Co. v. Ross*, 263 S.W.2d 673, 675 (Tex.Civ.App.—Galveston 1953, writ ref'd); *Texas Employers' Ins. Ass'n v. Moy-*

*ers,* 69 S.W.2d 777, 779–780 (Tex.Civ.App.—Texarkana 1934, writ dism'd); *see Weicher v. Ins. Co. of North Am.,* 434 S.W.2d 104 (Tex.1968); *see also Texas Employers' Ins. Ass'n v. Gregory,* 521 S.W.2d 898, 903 (Tex.Civ.App.—Houston [14th Dist.] ), *rev'd on other grounds,* 530 S.W.2d 105 (Tex.1975); *Liberty Mutual Ins. Co. v. Upton,* 492 S.W.2d 623 (Tex.Civ.App.—Fort Worth 1973, no writ); *Texas Employers Ins. Ass'n v. Monroe,* 216 S.W.2d 659 (Tex.Civ.App.—Galveston 1948, writ ref'd n.r.e.).

The majority also appear to fault Mid–Continent for not pleading the statutory act of God exclusion, although they acknowledge that the exclusion is not an affirmative defense. In the charge, the exclusion is an inferential rebuttal issue. *Walters,* 654 S.W.2d at 429 (McGee, J., concurring); *Transport Ins. Co. v. Liggins,* 625 S.W.2d 780, 784 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.).

I point out that the majority in effect disapprove the pattern jury charge, 2 State Bar of Texas, Texas Pattern Jury Charges 21.14 (1975), which the trial court followed here in submitting the instruction on windstorm. After this case, the only sure way to submit the statutory exclusion is in the words of the statute verbatim with act of God defined.

The supreme court has observed:

Trial judges often cannot recognize the appellate decisions that reverse them. This happens when appellate judges permit new theories to insinuate into the appellate process and then write about matters foreign to the trial proceedings.

*Walters*, 654 S.W.2d at 427. I suspect that the trial judge and counsel in this case will be hard put to recognize the reasoning upon which the majority rely to affirm the judgment in this case. I would dispose of the issue raised in the trial court and argued on appeal, and discourse no further. For this reason, I concur in the majority's judgment, but not in their opinion.