## CASUALTY RECIPROCAL EXCHANGE v. JOHNSON.

### No. 11199.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1945.

Victor Ippolito and A. H. Boyd, both of Beaumont, Tex., for appellant.

Major T. Bell, John G. Tucker, and Wyatt J. Baldwin, all of Beaumont, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is a Texas compensation case involving the payment of death benefits to the beneficiary, Beulah Polite Johnson. Hearing the case without a jury the trial court rendered a verdict and entered a judgment for the beneficiary.

There is no dispute that all the jurisdictional requirements under the Texas Compensation Law, Vernon's Ann.Civ.St. arts. 8306–8309a, have been fully complied with.

The important evidence shows that the American Service Company manufactured and sold ice at 1000 Pearl Street, which was located on the outskirts of Beaumont, Texas. Ice was manufactured and sold at this plant both at night and day. The American Service Company had in force and effect on and prior to June 16, 1943, a workmen's compensation insurance policy with the defendant, Casualty Reciprocal Exchange.

On the night of June 16, 1943, John Johnson was an employee of the American Service Company, and while engaged in such employment at the plant in question was shot and killed by some unknown person who drove from the street adjacent to the plant; the weapon used was a small calibre rifle, and only one shot was fired. Beulah Polite Johnson was the wife of John Johnson and the sole beneficiary under the Workmen's Compensation Law.

The premises of the American Service Company were located on Pearl Street, and the company maintained a loading platform and dock, and the public generally was invited to drive off this public street on to the company property and up to and alongside the platform and dock in order to purchase ice and transact business with the company. A concrete and shell driveway leading from the street to and alongside the platform and dock was maintained for the public.

John Johnson and one other colored man were the only employees who worked at night at this ice plant. Their hours were

from 11 to 7 in the morning. John Johnson had been working for the ice plant for two years and was the senior employee and night engineer and in charge, and as such, was responsible to his employer, American Service Company, for the plant, equipment and premises during the hours of his employment. The American Service Company did not employ and have on duty a night watchman or guard, but looked to the deceased, John Johnson, as the head man at night for such service.

At about 2:30 a. m. Johnson was shot by an occupant of an automobile which drove off the public street and on to the premises of the American Service Company; such automobile gave no notice of its approach, was being driven in a natural manner like any customer from the street upon the shell and concrete driveway and up to and alongside the dock and loading platform. John Johnson was not so situated at the time the automobile left the street as to be seen from the street by those driving in the street, and only became visible to the occupants of the car after they turned from the street on to the American Service Company premises.

Much stress is laid by counsel for the defendant on the fact that a riot between the races was going on down town in Beaumont when John Johnson was killed. At that time John Johnson with his helper was at work in the ice plant. He was engaged at the place and in the work he was employed to perform. Moreover, the injuries which he sustained and from which he immediately died were not caused by the act of a third person intending to injure John Johnson because of personal reasons. He did not provoke, invite or cause the assault. He had never spoken to and did not even know his assailant. He was at the plant of the American Service Company and was engaged in and about his master's business, and knew nothing of a riot. He had been entrusted with the premises and was performing the work he was to do at that place and at a time which exposed him to the risk and peril incident thereto and which brought about his injury and death.

Many assignments of error are brought forward by the defendant. But when the entire record is measured they fine down to this single issue: Under the Texas Workmen's Compensation Law did the death of John Johnson "arise out of his employment"?

■ It is without dispute that deceased at the time he was shot and killed was walking from his place of work on to the platform and dock to get a drink of ice water or to give orders to his helper. Acts essential to the life, comfort and convenience of an employee while at work are incidental to his service, and injuries sustained in their performance arise out of the employment and are compensable under the statute. Security Mutual Casualty Company v. Wakefield, 5 Cir., 108 F.2d 273; Fidelity & Casualty Co. of New York v. Mitchell, 5 Cir., 134 F.2d 537; Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973; Traders & General Insurance Co. v. Boysen, Tex.Civ.App., 123 S.W.2d 1016, 1020; United Employers Casualty Company v. Barker, Tex.Civ.App., 148 S.W.2d 260; Cassell v. United States Fidelity & Guaranty Company, 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137; Ætna Life Insurance Company v. Windham, 5 Cir., 53 F.2d 984; Maryland Casualty Company v. Levine, 5 Cir., 67 F.2d 816; Texas Employers Insurance Association v. Andrews, 130 Tex. 502, 110 S.W.2d 49.

■ The facts of this case meet the acid test as laid down in 71 C.J. pp. 647, 648, 651, and quoted with approval in the case of Texas Employers Insurance Association v. Andrews, 130 Tex. 502, 110 S.W.2d 49, 51: "An injury arising in the course of the employment may well 'arise out of the employment,' even though the risk or hazard be external to the employment where the employment or the conditions under which the work is necessarily performed cause exposure to the risk; thus an employee, performing the work he was employed to perform, whereby he is injured by an accident originating outside of the sphere of his employer's control, may still be considered as having his injury arise out of his employment." 71 C. J. (Sec. 399) pp. 652, 653; Heideman v. American District Telegraph Co., 230 N.Y. 305, 130 N.E. 302, 303; Vivier v. Lumbermen's Indemnity Exchange, Tex.Com.App., 250 S.W. 417.

We must not confuse those cases which deny recovery under the Texas Workmen's Compensation Law and which show injuries arising from personal difficulties of employees, and others which show and disclose that the employee had left and entirely abandoned the services of the master: In the case of Texas Employers Association v. Sparrow, 134 Tex. 352, 133

230

S.W.2d 126, it is shown that Sparrow had left the premises of his employer and sought to use the telephone not connected with his master's business. He was there assaulted and killed by one not a coworker and with whom he had had previous difficulties. In the case of Safety Casualty Company v. Wright, 138 Tex. 492, 160 S. W.2d 238, the employee therein seeking compensation was riding on a bus going to or from his work and it was held that this employee would be entitled to recover compensation (160 S.W.2d at page 245) but for the reason that the bus broke down and while aiding in repairing the motor on the bus he became saturated with gasoline which was ignited and from which he died. Compensation was denied for the reason that he had left his master's business and ceased to be a passenger on the bus. In the case of Fidelity & Casualty Co. of New York v. Cogdill, Tex.Civ.App., 164 S.W.2d 217, the employee there seeking compensation was assaulted and beaten by one about matters in no wise connected with the business and was the result of a personal grudge. The court found that the evidence did not warrant a recovery on any ground. Cf: Texas Employers Insurance Association v. Bailey, Tex.Civ. App., 266 S.W. 192; New Amsterdam Casualty Company v. Collins, Tex.Civ.App., 289 S.W. 701.

The Workmen's Compensation Act should be given a broad and liberal construction. Moreover, the trial judge sitting as a jury heard all the evidence, had the opportunity to see the witnesses and measure their credibility. There was abundant evidence to support his verdict, and the judgment is affirmed.