**HIGHLANDS UNDERWRITERS INSUR-ANCE COMPANY, Appellant,**

v.

**Mrs. Carol McGRATH, a Widow, Individually, and as Next Friend for her Minor Daughter, Staci Lynn McGrath, Appellees.**

No. 6258.

Court of Civil Appeals of Texas, El Paso.

Sept. 27, 1972.

Rehearing Denied Oct. 18, 1972.

Scarborough, Black, Tarpley & Scarborough, Frank Scarborough, Abilene, for appellant.

Watts & Cunningham, Leland Sutton, Odessa, Aubrey Edwards, Big Lake (Gray, Aaron & Dorsey, San Angelo, of counsel), for appellees.

## OPINION

WARD, Justice.

This is a workmen's compensation case which centers on "the third person's intentional act" exception of Article 8309, Tex. Rev.Civ.Stat.Ann., Section 1. The compensation claimants are the surviving widow and minor daughter of the deceased employee, David McGrath, Jr., who was killed by a shotgun wound on February 1, 1966. From the adverse jury verdict, the carrier has appealed. The judgment of the trial Court is reversed and rendered.

The statute provides that:

"The term 'injury sustained in the course of employment,' as used in this Act, shall not include:

\* \* \* \* \* \*

2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment."

The statutory defense was submitted as an instruction under the course of employment issue and definition and the jury returned an answer favorable to the claimants. The burden of proof was placed upon the claimants on the issue to prove that the death did not arise out of personal matters but that the injuries resulting in the death were directed against the deceased as an employee of Halliburton.

The Appellant's first points are of "no evidence" and "insufficient evidence" to support the jury's findings on the course of employment issue on the assertion that the assault upon the deceased and his killing were due to personal matters. Fortunately, for our purposes, the evidence is practically undisputed. The facts are that on a Saturday night before the shooting the deceased and his wife had gone to the T.P. Tavern in McCamey where Gerald Greer was also enjoying himself. When they were leaving, a fight occurred between the deceased and Gerald Greer. Gerald was badly beaten and had his jaw and cheekbones broken, there being testimony that Gerald claimed that the deceased used a full beer bottle on him. Gerald was hospitalized and on either Sunday or Monday afternoon Gerald's older brother, Tom Greer, found out about the beating. (The testimony related this far was incorrectly excluded by the trial Court and is referred to later. We insert it here as being appropriate to a chronological discussion of the events.) Tom made up his

mind to whip the deceased, David McGrath, and on Monday night made threatening phone calls to McGrath's residence in Rankin. Tom Greer asked McGrath to come out and fight and McGrath refused. Also, on this Monday night, Tom Greer had gone by the Halliburton yard in Rankin, where McGrath was employed, and learned from the dispatcher that McGrath would be driving a Halliburton concrete truck to the Cox Field early the next morning. Tom was determined to fight McGrath whether he was going to work or not and the first place he caught him, where a bunch of people were not around, he was going to jump him. It didn't make any difference where, whether it was on the job, in front of his house, or some place, but he, Tom Greer, was going to give him a whipping. Sometime on Monday afternoon, Tom Greer, Floyd Yates and a John Samuelson, all employees of the Western Company, and a competitor of Halliburton, were together and discussed the idea about whipping McGrath, and that if McGrath pulled a knife it would be a pretty good idea to disarm him with a chain. Yates secured a 12 inch piece of chain, wrapped a piece of tape around it, and gave it to Greer. Sometime that Monday night, the three went in Tom's pickup and waited around McGrath's residence, attempting to find McGrath. They started down to the Halliburton yard to get him but they decided there were too many people. They then decided, "Well, let's just drive on to Big Lake and if he stops at the cafe we will get him in the parking lot and if he doesn't stop, we will get him where he turns into the John Cox well and get him there. He had to slow down so slow." When they determined that McGrath had left the Halliburton yard to go to Big Lake, they got in Yates' car to follow him. At this time, Yates requested that Tom Greer hand him a 12 gauge shotgun which was loaded and in the pickup, as it would be useful in keeping any crowd away. The three men then drove in the Yates' car to Big Lake where they were certain McGrath would stop and have breakfast on the way to the Cox Field. They waited at the cafe until McGrath finished his breakfast. Greer and Yates got out of the car, with Greer going to one end of the Halliburton truck and Yates to the other. The spark plug wires were pulled from the distributor of the truck engine and Greer assumed that this was done by Yates as he was at the front end of the truck. When McGrath came out of the cafe, Yates "hollered" at him and McGrath ran for his truck and jumped on the running board. A fist fight ensued between Greer and McGrath and after Greer had beaten McGrath and McGrath was attempting to get under his truck, the shotgun went off killing McGrath and narrowly missing Greer. Greer testified that "he didn't really know if Yates fired the gun, if he did." After the shooting, Greer and Yates jumped back into the car with the shotgun and went by back roads to Rankin, where the trip had started that morning. On the way back they threw out the shotgun shells, the hand chain, and the gloves that Greer had worn. Greer testified that the dispute that he had with McGrath did not have anything to do with the fact that McGrath was working for Halliburton and that nothing that McGrath had done as a Halliburton employee had anything to do with his personal rancor against McGrath.

 The general rule is that if the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment. 58 Am.Jur. 765. The burden of proof is upon the claimant to show that an assault upon him was directed against him as an employee or because of his employment. Davis v. Maryland Casualty Company, 243 F.2d 463 (5th Cir. 1957); Aetna Casualty & Surety Co. v.

England, 212 S.W.2d 964 (Tex.Civ.App.—Beaumont 1948, no writ).

The Appellees argue that any antecedent malice held by Tom Greer toward the deceased was not to such a degree that he intended to commit any act which resulted in the death; that if Floyd Yates was the person who fired the fatal blast, there is absolutely no evidence of his antecedent malice or grudge held by him toward the deceased, the evidence being that these two had never spoken; that there is no connection between the antecedent intent on the part of Tom Greer to engage in a fist fight and the injury which led to the death. If the malice and intent of Greer is eliminated, then the argument goes that by reason of the performance of his duty, and the information given by the dispatcher, the deceased was placed in a position which contributed to the effectuation of the designs of the assassin and furnished the opportunity for his death that would not have existed but by reason of his being in the performance of his duty. Vivier v. Lumbermen's Indemnity Exch. et al., 250 S.W. 417 (Tex.Comm'n App.1923).

■ The cases relied on by the Appellees do not support their position. In none of these cases has there been the personal grudge or desire for revenge arising because of a matter personal to the injured employee and unconnected to the employment. The robbery of the night watchman, Vivier, supra, the robbery of the watchman commingled with a desire on the part of the robber to "see him kick," Southern Surety Co. v. Shook et al., 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd), the fatal attack by the insane person on the innocent employee where the insane person had a hatred for the fellow employee, Travelers Insurance Company v. Hampton, 414 S.W.2d 712 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.), or the fatal shooting of the innocent night engineer by the unknown assailant probably occurring as a result of a race riot, Casualty Reciprocal Exchange v. Johnson, 148 F.2d 228 (5th Cir. 1945) are all cases where the employment or conditions under which the work was necessarily performed caused exposure to the very risk resulting in the injury. In none of these cases did the workman, rightly or wrongly, provoke, invite or cause the assault. On the other hand, whenever the attack is personal, unrelated to the employee's employment, recovery has been denied. In Service Mut. Ins. Co. of Texas v. Vaughn et al., 130 S.W.2d 392 (Tex.Civ.App.—Beaumont 1939, writ dism'd jdgmt. cor.), recovery for the killing of the night watchman was refused because the killer-son-in-law had the personal hatred because of his wife's refusal to live with him. The fact that the watchman's duty put him in such a place as to give the murderer the opportunity to carry out his design, afforded no relief. In Fidelity & Casualty Co. of New York v. Cogdill, 164 S.W.2d 217 (Tex.Civ.App.—San Antonio 1942, writ ref'd w. o. m.), there was no direct evidence of the motive for the blackjacking of the movie projectionist. There was circumstantial evidence, though described as vague and inclusive, that pointed by implication to a purely personal grudge unrelated to the employment. The reasoning in that case prohibits any recovery in the case before us. It is there stated that it is a matter of law that the burden was upon the claimant to establish by competent evidence, a casual connection between the work the deceased was required to do in the master's behalf and the injuries sustained; "that the causative danger was peculiar to that work and not common to the neighborhood; that it was incidental to the business of his master and arose out of the relation of master and servant; that it originated from a risk connected with the employment and flowed from that source; * * * If the evidence was insufficient to support a finding that the assault was the result of a personal grudge (which would have required judgment in favor of appellant), then the cause and purpose of the assault was left wholly to surmise and conjecture, and in such case the courts have no power to choose one cause over

another." The suggestion of the Appellant that McGrath was protecting the Halliburton equipment or that there might be a dispute arising between employees of competing companies resembles the surmise mentioned in the Cogdill case. See Davis v. Maryland Casualty Company, supra, 62 Tex.Jur.2d 669. Here the evidence is positive that for reasons personal to Greer, Yates readily joined in planning, aiding and in carrying out an attack on McGrath which resulted in his death. Such evidence does not show that McGrath's death arose out of the scope and course of his employment.

Having considered only the evidence and the inferences tending to support the finding of the jury and having disregarded all the evidence to the contrary, the legal insufficiency point is sustained. As to the factual insufficiency point, we have considered all of the evidence and the reasonable inferences arising therefrom and the point is likewise sustained. We make this ruling which would only call for a remand of the case in the event we are in error in sustaining Appellant's first point.

■ We note that the trial Court sustained the Appellees' hearsay objection and excluded certain testimony by Tom Greer that Yates had told him that McGrath had once tried to run over Yates' wife. No complaint is made by the Appellant of this action by the trial Court but we do note in passing that this important motive evidence would have been admissible and material as to the state of mind of Yates at the time of the occurrence. 1 McCormick & Ray, Texas Evidence, Secs. 861–866.

■ However, the Appellant complains of the action of the trial Court in sustaining Appellees' motion in limine and in thereafter excluding from the jury all testimony relating to the difficulty and the fight which occurred between Gerald Greer and David McGrath on the Saturday night and which caused the serious injuries to Gerald Greer. All of these personal motives or reasons of Tom Greer for engaging David McGrath, Jr. in the fight were excluded on the ground that they were irrelevant and immaterial as the shooting was by Floyd Yates and the background material would have only tended to prejudice the jury against the Appellees. We feel this motive evidence went to the heart of this lawsuit. The attack was for a personal reason for revenge or anger. For reasons personal to Tom Greer, he enlisted the aid of his friend, Yates. Acting together, they laid in wait for David McGrath, Jr., assaulted him, and he died of a shotgun wound. "As we apprehend the intention of the Legislature, it was to apply to such cases where antecedent malice existing in the mind of another causing the other to follow the employee and inflict injury upon him, wherever he was to be found, * * *". Vivier v. Lumbermen's Indemnity Exch. et al., supra; 2 Mc-Cormick & Ray, Texas Evidence, Sec. 1534. This evidence was of such a nature, was "reasonably calculated to cause and probably did cause the rendition of an improper judgment." Rule 434, Tex.R.Civ.P. The point is sustained.

The Appellant's final complaint concerns the Court's definition of "Injury Sustained in the Course of Employment" and a related affirmative defensive issue. In view of our disposition of the case, we decline to discuss these points. We do refer to the suggested charges found in Texas Pattern Jury Charges, Vol. 2 at Secs. 21.20 and 21.21 as being one answer to the contentions made.

There is no suggestion by the Appellees that their case could be strengthened on another trial. It follows that the judgment of the trial Court is hereby reversed and rendered in favor of the Appellant.