AMERICAN STATES INSURANCE
COMPANY, Appellant,

v.

Pamela WALTERS, Guardian and Next
of Friend of Ivan Robert
Justice, Appellee.

No. 1494.

Court of Appeals of Texas,
Tyler.

June 24, 1982.

Rehearing Denied July 29, 1982.

Patrick F. McGowan, Strasburger &
Price, Dallas, for appellant.

SUMMERS, Chief Justice.

This is a suit for worker's compensation.
Pamela Walters as guardian and next
friend of Ivan Robert Justice, a minor,
brought suit for worker's compensation
death benefits alleging that Ivan Michael
Justice had been killed in the course and
scope of his employment. From a judg-
ment favorable to claimant, the insurer ap-
peals.

We reverse and render.

Appellant brings five points of error.
The first point of error is dispositive of the
appeal. Appellant contends there was no
evidence to support the jury finding that
the deceased Ivan Michael Justice died in
the course and scope of his employment.
We must agree.

When the contention is made that
there is no evidence to support a jury find-
ing, this court must consider only the evi-
dence and inferences from the evidence
which support the jury finding and disre-
gard all evidence and inferences to the con-
trary. *Elliot v. Great Nat'l Life Ins. Co.*,
611 S.W.2d 620 (Tex.1981); *Stodghill v.
Texas Employers' Ins. Ass'n*, 582 S.W.2d
102 (Tex.1979); *Texas Employers' Ins.
Ass'n v. Goad*, 622 S.W.2d 477 (Tex.App.—
Tyler 1981, writ ref'd n. r. e.).

The facts of this case are undisputed. The decedent, Ivan Michael Justice (Justice), was an employee of Richard Lamport & Associates, Inc. The principal business of Richard Lamport & Associates, Inc. was interior design and finishing. Justice was employed as the company's director of design. The decedent was described as the "right-hand man" of his employer, Richard Lamport (Lamport), president of the company. Justice frequently accompanied Lamport on business trips.

The record indicates that on Saturday, June 11, 1977, Justice and Lamport went to meet a client at the Airport Marina Hotel near the Dallas/Fort Worth Airport. At 2:00 p. m. that same afternoon both Justice and Lamport were found shot to death. Justice's body was in an open field west of Love Drive and south of Royal Lane in Irving, Texas. The autopsy showed that Justice died from multiple distant gun shot wounds to the back, and it was concluded that his death was homicide. Only two witnesses, Tom Zbaren (Zbaren) and Yumiko Popp (Popp), testified as to Justice's activities during the last two days of his life.

Zbaren, an employee of Richard Lamport & Associates, Inc., testified that on Thursday before the Saturday when Lamport and Justice were shot, Zbaren took a call from a person interested in doing a restaurant project. The man was primarily interested in seeing Lamport and stated he would call back. Zbaren testified that Lamport told him to make an appointment with the man if he called back; however, Zbaren testified that he did not talk to that person again and could not say for sure whether that man arranged to have a business appointment with Lamport or Justice. The last time Zbaren saw Lamport and Justice was Friday evening when he passed them in a car leaving the office.

Yumiko Popp testified that at the time of Lamport's death she was his girl friend and they owned a town house together. Popp had come from Japan five and one-half years previously and worked at the Sakura Japanese Restaurant. She was studying interior design at El Centro College. Lamport had made her secretary/treasurer and vice president of the company.

Popp testified that on the day before the murder, she received a phone call from a person named "Bill." The man wanted to talk to Lamport about an interior design job for a restaurant and club in the Dallas area. At that time, Lamport was with Justice in Abilene on another job.

The man again called Popp and Lamport's residence on Friday night at 7:00 or 8:00 o'clock. Popp testified that Lamport answered the phone and although she could hear what he was saying she could not hear what was being said to him. She does not remember what Lamport stated; however, later Lamport told her that the man wanted to talk about an interior design job with Lamport and they were going to meet the next day at the Airport Marina Hotel at the Dallas/Fort Worth Airport. Lamport called Justice to discuss it before going to the meeting and asked Justice to come over to the house. Lamport wrote on a pad of paper "Marina Hotel, 11:00" and the name "Bill Stephens."

On the day of the killing Justice came by and picked up Lamport to go to the airport to meet "Bill Stephens." This was the last time Popp saw them alive. Popp stated that she did not know what Lamport and Justice did from the time they left the house until their bodies were found.

The Worker's Compensation Act, art. 8306 § 1[1] covers: "damages for a personal injury sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained ...." Article 8309 § 1 defines injuries sustained in a course of employment so as to exclude:

■ An injury caused by an act of a third person intended to injure

---

1. All statutory references are to Tex.Rev.Civ. Stat.Ann. § 8306 et seq. (Vernon 1967) unless otherwise noted.

the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

The exclusion for intentional injury has been held applicable only where there existed in the mind of the assailant a pre-existing malice causing the assailant to follow the employee and inflict injury upon him wherever he, the employee, might be found. *Vivier v. Lumbermen's Indemnity Exch.*, 250 S.W. 417 (Tex.Comm'n App.1923, judgmt adopted); *Texas Employer's Ins. Ass'n v. Dean*, 604 S.W.2d 346 (Tex.Civ.App.—El Paso 1980, no writ). The burden of proof is upon the claimant to show that an assault upon him was directed against him as an employee or because of his employment. *Davis v. Maryland Casualty Co.*, 243 F.2d 463 (5th Cir. 1957); *Highlands Underwriters Ins. Co. v. McGrath*, 485 S.W.2d 593 (Tex.Civ.App.—El Paso 1972, no writ); *Aetna Casualty & Surety Co. v. England*, 212 S.W.2d 964 (Tex.Civ.App.—Beaumont 1948, no writ).

In *Wall v. Royal Indemnity Co.*, 299 S.W. 319 (Tex.Civ.App.—Fort Worth 1927, no writ), an employee was murdered just after leaving his job. The court in sustaining the insurer's general demurrer held that although Wall was killed at his place of employment, absent facts showing the killing was related to his employment, injuries caused by the intentional acts of third persons were not compensable.

In *Fidelity & Casualty Co. of New York v. Cogdill*, 164 S.W.2d 217 (Tex.Civ.App.—San Antonio 1942, writ ref'd w. o. m.), the claimant while working for his employer was struck from behind by a man carrying a blackjack. The San Antonio court in reversing a judgment for plaintiff noted that there was no evidence as to the motive for the attack. The court concluded that "then the cause and purpose of the assault are left wholly to surmise and conjecture, and in such cases the courts have no power to choose one cause over another." 164 S.W.2d at 219. (Citations omitted.)

Appellee concedes that the motive for the murder of Justice is unknown; however, appellee relies upon the case of *Vivier v.*

*Lumbermens Indemnity Exch.*, supra. In *Vivier* the employee, a night watchman, was robbed and killed on his employer's premises. The court in sustaining a judgment for the worker held that an injury was compensable if the employee was placed in the position where his environment contributed to his risk, and he would not have been killed *but for* his presence at the place in the performance of such duties. Appellee also relies on *Commercial Standard Ins. Co. v. Marin*, 488 S.W.2d 861 (Tex. Civ.App.—San Antonio 1972, writ ref'd n. r. e.), where an employee was raped and murdered on the employer's premises; and on *Southern Surety v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland, writ ref'd) where an employee was robbed and murdered on the employer's premises. In each instance the death was held to be compensable.

Appellee, relying on the above-cited authorities, contends Justice's death was compensable since "but for" Justice being on the job he would not have been murdered. The infirmity of appellee's reasoning is that applying the "but for" test assumes the very fact that appellee has the burden to prove: that the employee was killed for reasons other than personal.

In each of the cases cited by the appellee the motives of the assailants were known. The evidence negated any personal motive or antecedent malice on the part of the killer. The courts in those instances, knowing the motives for the killings, could determine if "but for" the deceased being on the job he would have been killed. In the instant case, as appellee concedes, there is absolutely no evidence as to *why* Justice was killed. If we do not know why Justice was murdered, neither this court nor the jury can determine whether "but for" Justice being on the job, he would not have been killed.

In *Commercial Standard Ins. Co. v. Marin, supra*, the court in discussing *Vivier* and *Wall* stated:

It is one thing for the assailant to say, "I am going to the X company, where Wall works, for the purpose of killing Wall," and another thing for him to say, "I am

going to the X company for the purpose of killing whoever might be on duty there." The first case is an example of antecedent malice, directed toward the victim personally, and, therefore, not compensable under *Vivier.* 488 S.W.2d at 867.

■ In the instant case, the motive of Justice's assailant is unknown. The jury therefore could do no more than speculate and surmise between the competing theories on why appellant was murdered. Where evidence is in equipoise, that is in a state where the existence of a fact is no more probable than its nonexistence, there is no evidence. *Adams v. Smith*, 479 S.W.2d 390 (Tex.Civ.App.—Amarillo 1972, no writ); *Calvert v. Union Producing Co.*, 402 S.W.2d 221 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.).

Appellee attempts to bolster his position by relying on *Deatherage v. International Ins. Co.*, 615 S.W.2d 181 (Tex.1981). In *Deatherage* the employee was found dead on his employer's premises. The supreme court stated that where an employee is found dead where his duties require him to be during working hours, the presumption arises that the *accident* was in the course and scope of his employment. (Emphasis added.)

■ *Deatherage* is not applicable. If there is one thing certain in this case, Justice's death was not an accident. Appellee's interpretation would have this court hold that where an employee suffers an intentional injury at the hands of a third party, the insurer has the burden to prove the injury *was not* employment related. This is contrary to the statute and case authority. The burden is upon the claimant to establish that the injury was employment related. This appellee has totally failed to do. Appellant's first point of error is sustained.

Having sustained appellant's first point of error, we find it unnecessary to reach appellant's other four points of error. The judgment of the trial court is reversed and it is ordered appellee take nothing.