Pamela WALTERS et al., Petitioners,

v.

AMERICAN STATES INSURANCE COMPANY, Respondent.

No. C–1536.

Supreme Court of Texas.

July 20, 1983.

Paul W. Pearson, Dallas, J. Thomas Sullivan, Santa Fe, N.M., for petitioners.

Strasburger & Price, Patrick F. McGowan and Rowland Foster, Dallas, for respondent.

POPE, Chief Justice.

Pamela Walters, as guardian and next friend of Ivan Robert Justice, instituted this claim for workers' compensation benefits against American States Insurance Company following the death of Justice's father, Ivan Michael Justice. The trial court rendered judgment for Walters based on the jury's finding that Justice received his fatal injuries in the course of his employment. The court of appeals reversed the judgment, holding there was no evidence to support the jury's verdict, and rendered judgment that Walters take nothing. 636 S.W.2d 794. We reverse the judgment of the court of appeals and remand to that court to consider the factual sufficiency of the evidence.

At the time of his death, Ivan Michael Justice was employed as an interior designer by Richard Lamport & Associates, Inc. On Saturday, June 11, 1977, Justice accompanied Lamport to meet a potential client at the Dallas Airport Marina Hotel. At 2:00 p.m., Justice and Lamport were found shot to death in a field near the Dallas/Fort Worth Airport. The Dallas County Medical

Examiner's report concluded that Justice died as a result of "multiple 'distant' gunshot wounds to the back." The assailant has never been apprehended.

The trial court asked this simple special issue, which the jury answered in the affirmative:

Do you find from a preponderance of the evidence that Ivan Michael Justice received his fatal injury in the course of his employment, as that term has been defined in this charge with Richard Lamport & Associates, Inc.?

The trial court also gave this instruction: "Injury in the Course of Employment" as that term is used in this charge, means any injury having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

The defendant, American States, did not object to the issue, the instruction, or the burden of proof. American States did not request an instruction on that part of the Workers' Compensation Act that excludes coverage for an injury caused by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment. Tex.Rev. Civ.Stat.Ann. art. 8309, § 1. On appeal, defendant American States focused upon that provision. American States had no point in the court of appeals complaining of the special issue or the instruction. The question that was preserved and is now before us is whether the answer to the issue submitted has support in the evidence.

Walters contends that there was evidence to support the jury verdict. She also argues that she is entitled to a presumption. Unneeded presumptions should not be invoked. The evidence and inferences from the facts in this case were legally sufficient to support the jury finding.

*Scott v. Millers Mutual Fire Insurance Co.,* 524 S.W.2d 285 (Tex.1975), was a case in which there was an absence of direct evidence of what an employee was doing at the time he received his injury. In *Scott,* as here, the jury found that the employee was injured in the course of his employment. The employee argued that he was entitled to a presumption. This court, after briefly discussing the arguments that we should indulge a presumption that would uphold the finding, said, "[P]etitioner has no need for a presumption to compel the jury to reach that conclusion." *Id.* at 288. We held, instead, that there were enough inferences from the facts proved. We wrote in *Scott:*

Our problem then is to determine whether the record contains evidence of probative value which, with the reasonable inferences therefrom, will support the jury's finding in response to Special Issue No. 3.

*Id.*

In *Scott* we cited two cases that supported our judgment. We wrote concerning *American General Insurance Co. v. Jones,* 152 Tex. 99, 255 S.W.2d 502 (1953):

Without adverting to any "presumption" as the intermediate court had done, we observed that the decedent was on the employer's premises during working hours and was traveling a route which under his employment he had been employed to travel, . . . .

*Scott v. Millers Mutual Fire Insurance Co.,* 524 S.W.2d at 289. We also relied upon *Elledge v. Great American Indemnity Co.,* 312 S.W.2d 722 (Tex.Civ.App.—Houston 1958), *writ ref'd n.r.e. per curiam,* 159 Tex. 288, 320 S.W.2d 328 (1959). That was an instance of a night watchman's unexplained death on the premises of his employer. Again, this court, without indulging a presumption, looked to the evidence and the circumstances, though unexplained, to conclude that the injuries were in the course of employment.

In cases of idiopathic falls on level surfaces, Texas courts have found no need to rely upon or create some kind of presumption. *E.g., American General Insurance Co. v. Barrett,* 300 S.W.2d 358 (Tex.Civ.App.—

Texarkana 1957, writ ref'd n.r.e.); *General Insurance Corp. v. Wickersham,* 235 S.W.2d 215 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). We discussed and approved the Texas idiopathic cases in *Texas Employers Insurance Association v. Page,* 553 S.W.2d 98 (Tex.1977), without mention of any presumption.

Texas has upheld awards on the positional-risk theory in a wasp-sting case, *Travelers Insurance Co. v. Williams,* 378 S.W.2d 110 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.); a lunatic assault case, *Travelers Insurance Co. v. Hampton,* 414 S.W.2d 712 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.); and an unexplained assault case, *Casualty Reciprocal Exchange v. Johnson,* 148 F.2d 228 (5th Cir.1945). In *McLean's Case,* 323 Mass. 35, 80 N.E.2d 40 (1948), a taxi driver was beaten from behind with a hammer, but not robbed. In the absence of any explanation for the assault or facts showing a personal or an occupational origin, the court awarded compensation because "employment brought him in contact with the risk that in fact caused his injuries." *Id.,* 80 N.E.2d at 42.

Professor Larson in *The Law of Workmen's Compensation* discusses the state of the law in other jurisdictions in cases of assaults upon and deaths of employees for which no explanation appears. In section 11.33 Larson says:

> Occasionally an assault occurs for which no explanation whatever appears, either because the assault was unwitnessed, or because, even with all the facts available, no one can figure out why the assault was committed. Nothing connects it with the victim privately; neither can it be shown to have had a specific employment origin. If the claimant is in fact exposed to that assault because he is discharging his duties at that time and place, there is no better reason here than in the unexplained-fall or death cases to deny an award merely because claimant cannot positively show that the assault was motivated by something connected with the work. Although the cases are more evenly divided on unexplained assaults than on unexplained falls or deaths, there is now a demonstrably larger body of authority for awarding compensation on these facts than for denying it.

1 A. Larson, *The Law of Workmen's Compensation* § 11.33 (1982).

Our most recent discussion of presumptions and inferences in connection with the unexplained death of an employee was in *Deatherage v. International Insurance Co.,* 615 S.W.2d 181 (Tex.1981). We repeated in *Deatherage* what we said in *Scott:*

> Mrs. Deatherage has no need for this presumption because she obtained a jury finding that Deatherage was injured in the course and scope of his employment. Nevertheless, we must determine whether there is more than a scintilla of evidence to support the jury finding.

615 S.W.2d at 183.

We hold in this case the same as we did in *Farley v. M M Cattle Co.,* 529 S.W.2d 751 (Tex.1975). We first look to the rules relating to inferences. When we can draw reasonable inferences from the evidence, we avoid the need for presumptions. As stated in *Farley,* a number of inferences may be drawn from a single fact situation. *Peveto v. Smith,* 134 Tex. 308, 133 S.W.2d 572 (1939); *Missouri-Kansas-Texas Railroad Co. v. Sanderson,* 174 S.W.2d 646 (Tex.Civ. App.—Eastland 1943, writ ref'd w.o.m.). The simple question before the jury and before us is a question of logic—whether the jury, upon the basis of the facts proved, made a reasonable inferential leap or whether their logical leap was too far. The facts, proved reasonably and logically, support the jury finding.

The evidence was that Justice was the "right-hand man" of Lamport, the president of Richard Lamport & Associates, Inc. It was a usual practice for Justice to accompany Lamport for discussions of interior design with prospective customers. Lamport told Justice on Friday to meet with him to discuss the mission the next day when they would meet the customer at the airport hotel. They left together to discuss the design of a restaurant with the custom-

er. But for Lamport's order that Justice accompany him to the business conference, Justice would not have left town with Lamport on the Saturday of the deaths.

An unknown customer first called Lamport's office on Thursday and said that he wanted to see Lamport about a restaurant project. On Friday, Lamport's office again received a call from a customer who wanted to talk to Lamport about an interior design job for a restaurant. Lamport and Justice at that time were on a job in Abilene. On Friday night, Lamport himself received a call. Three times a customer called to speak to Lamport, not Justice. This record does not reveal that the person or persons calling knew anything about Justice.

The posture of Justice throughout the whole scenario from Thursday to Saturday was never anything other than that of an employee who was following orders, instructions, and performing his duties. He was instructed to pick up a portfolio of relevant data to take to the conference. Lamport asked him to come by his house to discuss the meeting in advance. Lamport had jotted down the note, "Marina Hotel, 11:00." At 2:00 p.m. both Lamport and Justice were discovered dead in the general area.

The assassin was still unknown at the time of trial. Upon the basis of the facts presented, the jury could reasonably find that the unknown caller who had set up the meeting with Lamport after three calls to him, was aiming at Lamport. Nothing in this record shows that the phantom customer knew anything about Justice or that he would come to the meeting. The jury could make the reasonable inference that Justice was present for no reason other than as an employee who was at the place of service, at the time of service, and doing the precise service as an employee that he was ordered and expected to do.

Trial judges often cannot recognize the appellate decisions that reverse them. This happens when appellate judges permit new theories to insinuate into the appellate process and then write about matters foreign to the trial proceedings. American States ar-gues before this court that the judgment must be reversed because there was no evidence of the assailant's motive. However, the jury was only asked whether Justice was in the course of his employment. The jury was not instructed and there was no way for the jury to know that there was a statute that declared Justice was not an employee if his death was caused by an "act of a third person intended to injure him because of reasons personal to him and not directed against him as an employee, or because of his employment." Tex.Rev.Civ. Stat.Ann. art. 8309 § 1. Nobody requested such an instruction. The jury's function was to answer the issue. They did that, and we should not charge them with knowledge of a statute about which they knew nothing.

There was evidence that supported the jury finding, but this does not determine our judgment. American States had points before the court of civil appeals that the evidence and the inferences were factually insufficient. American States repeats its factual sufficiency argument in a cross-point before this court. We have no jurisdiction over that point, and the cause must be remanded to the court of appeals for their decision. *Deatherage v. International Insurance Co.,* 615 S.W.2d 181 (Tex.1981); *Scott v. Millers Mutual Fire Insurance Co.,* 524 S.W.2d 285 (Tex.1975).

American States also raises cross-points concerning the admission and exclusion of evidence. It contends that the trial court erred in admitting testimony from Lamport's employees regarding the telephone calls seeking appointments with Lamport. American States argues that the callers' statements to the employees were hearsay. However, statements tending to show the state of mind and immediate purpose of a declarant are admissible. *Great American Indemnity Co. v. Elledge,* 159 Tex. 288, 320 S.W.2d 328 (1959) (per curiam). Here, the callers' statements to Lamport's employees were admissible to show that the state of mind and immediate purpose of the callers were to arrange a business meeting with Lamport. Further-

more, Lamport's statement to his employee regarding the call he received was admissible to show his then existing state of mind; that is, his belief that he and Justice were going to the airport to meet a client.

■ American States also claims the trial court erred in excluding its exhibit one, an uncertified copy of Justice's death certificate. Any error the trial court may have committed in excluding this exhibit was harmless. The jury was fully apprised of the manner of Justice's death by the introduction of plaintiff's exhibit four, the autopsy report of the Dallas County Medical examiner. Tex.R.Civ.P. 503.

We reverse the judgment of the court of appeals and remand to that court solely to consider American States' cross-point regarding the factual sufficiency of the evidence.

McGEE, J., concurs in opinion in which SPEARS and KILGARLIN, JJ., concur.

McGEE, Justice, concurring.

I concur in the result the majority has reached. I agree with the holding of the court of appeals that Walters failed to sustain her burden of establishing that Justice was not killed for reasons personal to him. I would, however, hold that Walters is entitled to the benefit of a presumption negating the statutory exclusion.

In order to establish an injury sustained in the course of employment, as a general rule, the claimant in a workers' compensation suit must satisfy a two-prong test: "(1) the injury must have occurred while the employee was engaged in or about the furtherance of the employer's business; and (2) the claimant must show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession." *Deatherage v. International Insurance Co.,* 615 S.W.2d 181, 182 (Tex.1981). There are, however, four statutory exclusions to the definition of "injury sustained in the course of employment." They are:

(1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public.

(2) *An injury caused by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.*

(3) An injury received while in a state of intoxication.

(4) An injury caused by the employee's wilful intention and attempt to injure himself, or to unlawfully injure some other person.

Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (emphasis added). The exclusions reflect a legislative determination that certain injuries do not meet the second prong of the test because they are not causally connected to employment. If the employee's injury is the result of one of the four exclusions enumerated in article 8309, section 1, the injury is not "of a kind and character that had to do with and originated in the employer's work, trade, business or profession." *See Texas Indemnity Ins. Co. v. Cheely,* 232 S.W.2d 124, 126 (Tex.Civ.App.— Amarillo 1950, writ ref'd).

Walters and American States agree there is no evidence as to the reason Justice was killed. American States argues that Walters has failed to prove that Justice was not killed "because of reasons personal to him." Since Walters has not negated the statutory exclusion, American States claims there is no evidence to support the jury's finding that Justice was killed in the course of his employment. This contention was sustained by the court of appeals. Walters argues that the court of appeals erred in placing the burden of disproving the exclusion on her instead of requiring American States to affirmatively establish its applicability. In the alternative, Walters contends she is entitled to the benefit of a presumption that Justice was not killed for personal reasons since he was found dead at a place where his duties required him to be, or where he might have properly been, during

the hours of his employment. I would sustain Walters' latter contention.

The statutory exclusions to the definition of "injury sustained in the course of employment" are not affirmative defenses. *See Traders & General Insurance Co. v. Ross*, 263 S.W.2d 673, 675 (Tex.Civ.App.—Galveston 1953, writ ref'd). Rather, they are inferential rebuttal issues. *Transport Insurance Co. v. Liggins*, 625 S.W.2d 780, 784 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Whenever an exclusion is raised by the evidence, the burden is on the claimant to negate the exclusion as part of his case. *E.g., Texas Employers' Insurance Association v. Gregory*, 521 S.W.2d 898 (Tex.Civ.App.—Houston [14th Dist.]) (suicide), *rev'd on other grounds*, 530 S.W.2d 105 (Tex. 1975); *Liberty Mutual Insurance Co. v. Upton*, 492 S.W.2d 623 (Tex.Civ.App.—Fort Worth 1973, no writ) (injuries inflicted by third person); *Traders & General Insurance Co. v. Ross*, 263 S.W.2d 673 (Tex.Civ.App.—Galveston 1953, writ ref'd) (act of God); *Texas Employers Insurance Association v. Monroe*, 216 S.W.2d 659 (Tex.Civ.App.—Galveston 1948, writ ref'd n.r.e.) (intoxication). Thus, in any case involving an intentional assault upon the employee, the claimant must persuade the trier of fact that the attack was not motivated by reasons personal to the employee, but was directed against him because of his employment. *Highlands Underwriters Insurance Co. v. McGrath*, 485 S.W.2d 593 (Tex.Civ.App.—El Paso 1972, no writ).

The majority goes to great lengths to tell us what American States did not do in the trial court. In my opinion, this discussion misses the mark. Granted, the burden was on American States to raise the applicability of the statutory exclusion. Once it was established that Justice's death was the result of a homicide—an intentional injury inflicted by a third person—American States discharged its burden. At this point, the burden shifted to Walters to establish, by direct or circumstantial evidence, that Justice was not killed for personal reasons. When Walters failed to sustain her burden, as she clearly did, there was no need to instruct the jury that an injury sustained in the course of employment did not include an injury intentionally inflicted on the employee for reasons personal to him. Indeed, in the absence of a presumption that Justice was not killed for personal reasons, the trial court should have sustained American States' motion for a directed verdict.

I agree with the majority opinion to the extent it holds there was some evidence that Justice was engaged in and about the furtherance of Lamport's business; i.e., that Justice received his fatal injuries during the hours of his employment and was at a place where he might have properly been. Evidence that Lamport and Justice were going to the Airport Marina Hotel to meet a potential client, when coupled with further evidence that both men were found dead in the general area shortly thereafter, supports such an inference.

This does not end our inquiry, however. There must also be evidence that Justice's injury was of a kind and character that originated in Lamport's business; i.e., that Justice was not killed for personal reasons. This is where I part company with the majority.

The majority reasons that because "a customer" made three telephone calls and asked to speak with Lamport on each occasion, a jury could reasonably infer that this customer: (1) intended to kill Lamport, (2) did not intend to kill Justice, and (3) did in fact kill both men. There are several problems with this reasoning, not the least of which is that it assumes the same "customer" made each of these three calls, an assumption not supported by the evidence. Even if we accept this assumption, there is still no basis for the majority's conclusion that this mysterious customer did not intend to kill Justice.

Before we may validly infer the existence of "B" from the existence of "A," we must establish the existence of a relation between the given fact and the claimed conclusion. For certain purposes, we may accept the claimed conclusion as the basis for action if our hypothesis is nothing more than the formulation of a possibili-

ty. Often, we base our conduct on the truth of a probable hypothesis. But our courts insist, in the course of litigation, that a fact be established by evidence creating more than the mere possibility or, generally speaking, bare probability of its existence. Where a party on whom rests the burden of establishing the existence of a fact relies on circumstantial evidence exclusively for the purpose of discharging his burden, the evidence must be sufficient to establish that the hypothesis for which he contends is more probable than other hypotheses which may be based on such evidence. That is, the evidence must show, given the existence of "A," that the existence of "B" is more probable than its non-existence.

Cadena, *The Pyramiding of Presumptions and Inferences in Texas,* 4 St. Mary's L.J. 1, 3–4 (1972). The majority's hypothesis fails this test.

In this case there is no evidence from which the jury could reasonably infer the motive of Justice's assailant. *Cf. Commercial Standard Insurance Co. v. Marin,* 488 S.W.2d 861 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.), and cases cited therein. The applicability of the statutory exclusion distinguishes the instant case from *Deatherage* and *Scott v. Millers Mutual Fire Insurance Co.,* 524 S.W.2d 285 (Tex. 1975). As in *Deatherage* and *Scott,* the jury in this case was free to infer that Justice received his injuries while he "was engaged in or about the furtherance of his employer's business." The jury could not, however, draw a second inference, based solely on this first inference, that Justice was not killed for personal reasons. This is because a jury's verdict must "be based upon more than surmise and guesswork." *Phoenix Refining Co. v. Powell,* 251 S.W.2d 892, 902 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.).

I am, however, persuaded that basic fairness justifies a relaxation of the claimant's burden of proof in cases of unexplained assaults, particularly when the victim's death has removed the only possible witness. For this reason, I would adopt a presumption negating the statutory exclusion. The adoption of a presumption favoring the claimant, moreover, is consistent with a liberal construction of the Workers' Compensation Act in favor of the employee and his beneficiaries. *See Huffman v. Southern Underwriters,* 133 Tex. 354, 128 S.W.2d 4 (1939). A liberal construction in favor of compensation requires a restrictive application of the statutory exclusions to the definition of injury sustained in the course of employment.

When an employee is found dead under circumstances that indicate his death occurred within the time and area limits of his employment, we have held the jury is free to infer that the employee received his fatal injuries during the course of his employment. *Deatherage v. International Insurance Co.,* 615 S.W.2d at 183. In my opinion, when the cause of death is the intentional act of an unknown assailant whose motives cannot be discerned, these same facts should also give rise to a rebuttable presumption that the assailant acted for reasons other than those personal to the employee. With the aid of such a presumption, the evidence is legally sufficient to support the judgment on the jury's verdict.

SPEARS and KILGARLIN, JJ., join in this concurring opinion.