TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00350-CV






Appellant, Evans P. Weaver//Cross-Appellants, Jim Tobin and Linda Tobin


v.


Appellees, Jim Tobin and Linda Tobin//Cross-Appellees, Evans P. Weaver;

Weaver Interests, Inc.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN301325, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING



 

D I S S E N T I N G O P I N I O N

 

 Fraud is a fact question that is uniquely within the province of the trier of fact to
resolve after weighing the evidence, including the nature of the transaction between the parties,
the totality of the circumstances, and the credibility of the witnesses. The majority sets aside a jury's
unanimous fraud finding, substitutes its own factual determination that there was no evidence to
support the jury's finding, and renders a take-nothing judgment. Because I conclude the evidence
was legally and factually sufficient to support the jury's fraud finding, I would affirm the trial court's
judgment. Accordingly, I respectfully dissent.

 A jury in 2004 returned a unanimous verdict on all submitted theories of recovery in
favor of appellees Jim and Linda Tobin against appellant Evans P. Weaver and Weaver Interests, Inc. 
The lawsuit arose from two contracts between the Tobins and Weaver Interests that provided
for Weaver Interests to design and construct improvements on residential property, including
the design and construction of an auto park driveway area on a cost-plus basis. (1)
 As to the fraud
claim against Mr. Weaver, who was the owner and president of Weaver Interests, the Tobins
contended that he fraudulently induced them to enter into the contracts by misrepresenting
anticipated construction costs.

 The jury awarded actual damages to the Tobins in the amount of $245,957.23 in three
separate damages findings that were conditioned on three separate affirmative liability findings: 
(i) against Weaver Interests for DTPA violations, (ii) against Weaver Interests for breach of contract,
and (iii) against Mr. Weaver for fraud. After the Tobins filed an election of remedies to recover
actual damages on their fraud claim against Mr. Weaver and to recover attorney's fees against
Weaver Interests pursuant to their DTPA claims, the district court entered judgment awarding actual
damages against Mr. Weaver but no amount against Weaver Interests.

 On appeal, Mr. Weaver contends that the evidence was legally and factually
insufficient to support the jury's fraud finding. Because Mr. Weaver did not object to the jury
charge, we assess the sufficiency of the evidence in light of the jury charge the district court actually
submitted. See Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 (Tex. 2001); Bradford
v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000). The
district court's submitted fraud question included instructions defining fraud, misrepresentation, and
superior knowledge:

 

 Did Evans Weaver commit fraud against the Tobins?


 "Fraud" occurs when:


 a. a party makes a material misrepresentation,


 b. the misrepresentation is made with knowledge of its falsity or made
recklessly without any knowledge of the truth and as a positive assertion,


 c. the misrepresentation is made with the intention that it should be acted on by
the other party, and


 d. the other party acts in reliance on the misrepresentation and thereby suffers
injury.


 "Misrepresentation" means:


 a. a false statement of fact; or


 b. a promise of future performance made with an intent, at the time the promise
was made, not to perform as promised; or


 c. an expression of opinion that is false, made by one claiming or implying to
have special knowledge of the subject matter of the opinion.


 "Special Knowledge" means knowledge or information superior to that possessed by
the other party and to which the other party does not have equal access.

 

 Given the nature of the transaction, between an experienced builder and his
customers, and the totality of the circumstances, I would conclude that there was ample evidence to
support the jury's affirmative fraud finding under the submitted instructions. See Prudential Ins. Co.
v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161-62 (Tex. 1995) (buyer not bound by an agreement
to purchase something "as is" if induced to make because of fraudulent representation; nature of
transaction and totality of circumstances considered in this determination); Kupchynsky v. Nardiello,
230 S.W.3d 685, 689-91 (Tex. App.--Dallas 2007, pet. filed) (same).

 The evidence supports a jury finding that Mr. Weaver had "special knowledge" as an
experienced builder, and that he, "claiming or implying to have special knowledge" of the cost
and time to complete the auto park driveway area as contemplated by the parties, made material
misrepresentations to the Tobins. Mr. Tobin testified that he and his wife talked to Mr. Weaver
about three separate projects, "the auto park driveway area, the shop area, and then the remodeling,"
and that they told Mr. Weaver that they were hoping to spend "roughly $300,000" for everything. 
He testified that Mr. Weaver told them "he was an experienced builder," "what you want to do
is very doable," and that "we can make the changes quickly and cheaply." As to the auto park
driveway area, Mr. Tobin testified that he and his wife discussed the budget of $60,000 with
Mr. Weaver, and Weaver told them $60,000 was "just way too much" for the auto park driveway
area and that he could do it for "cheap, cheap, cheap" and within thirty days.

 The evidence supports a jury finding that Mr. Weaver knew his misrepresentations
as to the auto park driveway area to be false. There was evidence that Mr. Weaver made the 
misrepresentations after reviewing the scope of the proposed project with the Tobins and after
inspecting the property. Mr. Weaver testified that he had performed similar projects within the last
few years and that he knew costs: "I have been doing this for 33 years and I know how much rock
it takes and I know how much steel it takes and I know how much concrete it takes." In contrast to
Mr. Weaver's representations that $60,000 was "too much" and that he could do it for "cheap," the
Tobins were invoiced over $100,000 within a short time frame and ultimately paid over $300,000
without the auto park driveway area being completed. Alternatively, based on the definition of fraud
in the charge, the jury could have credited the evidence that the construction and design of the
auto park driveway area was complicated and that costs were uncertain to conclude that Mr. Weaver
made misrepresentations "recklessly without any knowledge of the truth and as a positive assertion." 
The experts agreed that the auto park driveway area was complicated, but Mr. Weaver made positive
assertions as to the cost and time to complete the area and then recommended immediately
commencing construction without final plans. (2)

 The evidence supports a jury finding that Mr. Weaver made misrepresentations
with the intent that the Tobins act on them. Weaver Interests's balance sheet, that was admitted as
an exhibit, showed a negative net worth of approximately $500,000 and that Weaver Interests owed
Mr. Weaver personally over $2.1 million. Statements of Weaver Interests's checking accounts, also
admitted as exhibits, showed that the accounts had negative balances at times during the relevant
time period and that the balance in one of the accounts was under $100 around the time the parties
entered into the contracts. From this evidence, the jury could have inferred that Mr. Weaver and
Weaver Interests were in need of immediate cash and that Mr. Weaver intentionally misled the
Tobins to induce them to agree to the contracts and to allow immediate construction and cash
payments to begin. See Walters v. American States Ins. Co., 654 S.W.2d 423, 426 (Tex. 1983) (jury
entitled to make inferences if they are reasonable and based on the facts proved).

 The evidence also supports a jury finding that the Tobins relied on Mr. Weaver's
misrepresentations and suffered injury. Both Mr. and Mrs. Tobin testified that they relied on
Mr. Weaver's expertise and that they would not have entered into the contracts without
Mr. Weaver's representations concerning cost to complete. (3)
 They also testified that they paid over
$300,000, and there was expert testimony that the auto park driveway area as constructed by Weaver
Interests was neither completed nor functional for its intended purposes.

 The majority holds that the evidence was legally insufficient to support the fraud
finding because "there was no evidence that Weaver made a false representation of material fact."
Without addressing the fraud question and instructions submitted to the jury, the majority limits
its analysis to Mr. Weaver's representation that the cost to construct the auto park driveway
area "would not exceed approximately $60,000." The majority concludes that the Tobins failed to
establish that "they described and Weaver understood the specific product to be constructed and
that the product could not be built for approximately $60,000." The majority's analysis ignores the
proper standard of review.

 We are to assess the legal and factual sufficiency of the evidence under the charge as
submitted. See Wal-Mart Stores, Inc., 52 S.W.3d at 715. Based on the charge as submitted, the jury
could have credited the evidence that Mr. Weaver made misrepresentations after discussing the scope
of the proposed project with the Tobins and after inspecting the home site, that he was an
experienced builder that knew costs, and that he had done similar projects. (4) Based on this evidence
and the fraud question and instructions submitted to the jury, the jury could have determined that
Weaver, as a builder "with knowledge or information superior to that possessed by [the Tobins] and
to which [the Tobins did] not have equal access," expressed false opinions "with knowledge of
[their] falsity." Alternatively, the jury could have credited the evidence that the cost to construct the
auto park driveway area was uncertain to conclude that Mr. Weaver expressed false opinions as to
the cost to construct "recklessly without any knowledge of the truth and as a positive assertion."

 The question whether Mr. Weaver committed fraud against the Tobins was ideally
suited for the jury and was given to them by the judge. The jury answered this question in favor of
the Tobins. Because the evidence was legally and factually sufficient to support the jury's fraud
finding, I would affirm the district court's judgment against Weaver for actual damages. (5)

 As to the issue the Tobins raise on appeal, I agree with the majority's conclusion that
the Tobins are not entitled to attorney's fees against Weaver Interests because the Tobins elected to
recover their damages pursuant to the jury's fraud finding. I would therefore affirm the judgment
in all respects.


 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: July 18, 2008

1. The letter agreement from Mr. Weaver on behalf of Weaver Interests, Inc., to the Tobins
set out the parties' initial agreement to begin construction immediately on a cost-plus basis:


 Thank you for your compliments on my work and your interest in my
company providing Design Planning and Construction Services at Falcon Ledge.


 I am excited about this Project and look forward to working with you to make
the Residence "your dream." I assure you; I am capable of such a task!


 In an effort to move forward swiftly and in advance of a formal written
Construction Agreement; I propose we enter into this letter Agreement to commence
Phase One of the Project; as follows:


 1-Site clean up and haul off.

 2-Survey of boundary.

 3-Remove all trash and debris.

 4-Commence driveway court turn around area.


 I will start this work immediately. I will bill you against an initial
Construction Draw of Fifty Thousand Dollars ($50,000.00) on a cost plus 15% basis. 
My labor crew(s) charges/fees will be billed 17% for labor administration.


The parties also entered into a "Design and Planning Agreement" that provided for the design of all
phases of the contemplated project for a fee of $50,000:


 a. Master plan entire site,

 b. Design interior and exterior renovations for the existing Residence,

 c. Design courtyards, walls, water features, exterior fireplaces and all site
features, upon the site,

 d. Design all additional gazebos, buildings, wine cellar(s), studios and/or
additional buildings to be placed upon the Property,

 e. Master plan and re-design entry and auto court,

 f. Design and Master plan interior of Residence.

2. As to why construction began immediately without plans, Mr. Tobin testified on cross-examination:


 Q. Did you request that [Mr.] Weaver begin immediately without any working
plans?

 

 A. [Mr. Weaver] actually recommended that as a course of action because it was
difficult to see from the hillside what was underneath the dirt and brush to
figure out what kind of structure would need to be built. I agreed because it
made sense to figure out what was down there first.
3. During redirect examination, Mr. Tobin testified that he would not have entered into the
agreement without the representation that the cost would be less than $60,000:


 Q. Did you discuss the budget of $60,000 for the auto park?


 A. Yes, Mr. Weaver said that estimate was too high.


 Q. Was that the basis of you entering into the cost-plus contract?


 A. Yes, we never would have built the driveway for a third of a million dollars.


 Mrs. Tobin testified similarly during direct examination:


 Q, Did [Mr. Weaver] ever quote you a budget to build the auto park?


 A. He had made the statement when we had talked about a friend of ours who
had spent 60,000 on [a] driveway that that would be too much.


 Q. Was that figure ever put in any kind of written estimate?


 A. No, it was not, but we kind of took it as kind of [a] ballpark idea as to where
this would go.


 Q. Would you have entered into any contracts with Mr. Weaver regarding
construction of the auto park had you known that the budget would eventually
exceed five times its original--


 A. Absolutely not.


 Q. Did you rely on his representation?


 A. Yes, we did.

4. Mr. Tobin testified that the Tobins discussed the auto park driveway area with Mr. Weaver
at the home site and that they told him what they wanted--"to fix the driveway situation, because
it's a long, narrow driveway without a circular drive at the bottom . . . [to] make it more
maneuverable to move cars in and out and have an extra place for a car." There was also testimony
that the home site was located on the side of a hill, that Mr. Weaver inspected the home site before
making representations as to cost, and that he was "able to quote a budget of $60,000" because
Mr. Weaver said that "he was experienced. He built like this all the time. He had built on hillsides
and, you know, sounded like he knew what he was doing."
5. In reversing the judgment, the majority should remand this case to the district court instead
of rendering. Reversing the fraud finding should not preclude the Tobins from pursuing recovery
under the alternative theories that the jury found in the Tobins' favor, including recovering actual
damages and attorney's fees pursuant to the DTPA against Weaver Interests. See Boyce Iron Works,
Inc. v. Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988) (when jury returns favorable
findings on alternative theories, prevailing party may seek recovery under an alternative theory if the
judgment based on one theory is reversed on appeal).